THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT ALEXANDER, Also Known as DANIEL BROUCEK, True Name EARL COX, Appellant.

First Department, April 26, 1988

### APPEARANCES OF COUNSEL

*Alan Gadlin* of counsel *(Joyce P. Adolfsen* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

*Richard Ware Levitt* for appellant.

### OPINION OF THE COURT

KASSAL, J.

In accordance with the prosecutor's obligation to deal fairly with an accused and candidly with the courts, there must be immediate and forthright disclosure when a prosecution witness's testimony has impaired the fact-finding process of the Grand Jury.

During the early evening hours of Sunday, May 19, 1985, defendant was discovered on the sixth floor of a commercial building located at 900 Broadway in Manhattan by Police Officers Donna Zangara and Julio Dobles, who arrived at the location in response to a radio communication reporting a burglary in progress. As the doors to the elevator car opened on the sixth floor, the officers saw defendant standing in front of the elevator door, holding a cardboard box. Inside the box were a typewriter, three screwdrivers and a red crowbar. The officers observed that the door to one of the offices on the floor had been pried open and that there were red pry marks around its frame. Defendant was frisked and taken into custody by Officers Zangara and Dobles.

Minutes later, Officer Daniel Sharkey and his partner, Officer Loperina, arrived on the scene. When they emerged

from the elevator, defendant was positioned against the back wall opposite the elevator. He was handcuffed, and Officers Zangara and Dobles stood on either side of him, with the cardboard box on the floor nearby. Eventually, two other police officers, Morea and McCarthy, also arrived.

Defendant was arrested on charges of burglary, possession of stolen property, and possession of burglar's tools, and the case was subsequently presented to the Grand Jury. There, Officer Sharkey, one of the second team of officers on the scene, was the sole witness to testify and provide evidence establishing that defendant had committed the offenses charged. In pertinent part, Sharkey's testimony, as elicited through questions posed by the prosecutor, was as follows:

"Q. You say you responded to the sixth floor. Could you tell the grand jury what if anything you observed when you arrived on the sixth floor?

"A. When the door on the elevator opened up, there stood a male black.

"Q. Did you subsequently learn the name of that individual?

"A. Robert Alexander.

"Q. Is he the defendant in this case?

"A. Yes.

"Q. What, if anything, was Mr. Alexander doing?

"A. Mr. Alexander had a box with an IBM typewriter, one red pry bar and three screwdrivers."

In response to further inquiry, Sharkey reiterated that defendant "possessed three screwdrivers and one red crowbar". The Grand Jury returned a true bill charging defendant with burglary in the third degree, criminal possession of stolen property in the second degree, and possession of burglar's tools.

Defendant's pretrial omnibus motion, served on or about June 26, 1985, included a motion to inspect the Grand Jury minutes and dismiss for legal insufficiency, as well as a motion to suppress physical evidence. By responding affirmation dated July 9, 1985, the trial Assistant District Attorney, who had also presented the case to the Grand Jury, stated that the evidence heard by the Grand Jury was legally sufficient and, with respect to the suppression motion, that the defendant lacked standing to contest the seizure of the cardboard box and its contents because "the People do not allege that the items in question were seized from the *person* of the defendant" (emphasis in original). Defendant's motions were denied.

Approximately six months later, on January 6, 1986, the prosecutor informed the court, immediately prior to trial, that he had, at some unspecified point after filing the July 9, 1985 response to defendant's omnibus motion, spoken with another police officer, "who was earlier on the scene", and that "it does appear in fact that the defendant did have possession, actual possession of the box containing the typewriter and crowbars *[sic]*". This information was provided in the context of the prosecution's changed position reflecting that the defendant did have standing to challenge the seizure, and its consent to a suppression hearing on that basis. Significantly, the prosecutor did not advise the court of the possibility that Officer Sharkey's testimony, which clearly left the impression that Sharkey had been the first officer to arrive on the scene and apprehend the defendant with the stolen property and burglar's tools, had misled the Grand Jury.

Upon learning that the prosecution had shifted its position on the issue of whether or not he was alleged to have actually possessed the cardboard box, defendant made a written *pro se* motion to dismiss the indictment. Defendant's motion requested, *inter alia,* dismissal of the indictment on grounds of "insufficiency and defect under [CPL] section[s] 210.20 [and] 210.35". Among the assertions contained in defendant's application were that "there has been fraud placed before this Court or at least a 'smoke screen' ". Defendant's motion was denied and, upon proceeding to jury trial, he was found guilty of each of the counts in the indictment.

We now reverse and dismiss the indictment as having been based on legally insufficient evidence, namely, testimony by Sharkey which was not based on personal observations, and which was certain to have misled the Grand Jury as to such personal knowledge.

A Grand Jury may indict a person when the evidence before it is legally sufficient to establish that he has committed the offense charged. (CPL 190.65 [1].) The term "legally sufficient evidence" is defined as "competent evidence which, if accepted as true, would establish every element of an offense charged and the defendant's commission thereof". (CPL 70.10 [1]; *People v Haney,* 30 NY2d 328, 335-336.) Where a claim of legal insufficiency has been unsuccessfully asserted, and a judgment of conviction based upon legally sufficient trial evidence is subsequently rendered, appellate review of the insufficiency claim will generally be barred. (CPL 210.30 [6]; *People v*

*Hallett,* 71 AD2d 815, *mot to reinstate dismissed appeal denied* 60 NY2d 698.)

However, in *People v Pelchat* (62 NY2d 97, 106), the Court of Appeals stated that appellate review of a defendant's claim of legally insufficient evidence before the Grand Jury will not be foreclosed after judgment in certain circumstances. Among them are where the testimony given to the Grand Jury was false or was based on hearsay which the Grand Jury may not have understood as such. The facts in the case at bar strongly suggest that the testimony was deliberately given in a manner designed to mislead the Grand Jury into concluding that Sharkey had arrived at the scene in time to personally observe defendant committing criminal acts. Indeed, in order to meet its burden of establishing a prima facie case, the People were obligated to present such a witness, i.e., one whose personal observations could provide competent and admissible evidence which, if left unexplained and uncontradicted, would warrant a conviction after trial. *(People v Williams,* 110 AD2d 798, 799.)

Here, Sharkey had, despite the impression left by his testimony, arrived in time to observe only that there was a handcuffed suspect in custody, flanked by two police officers, with the box nearby. Had he so testified, that evidence alone clearly would not have sufficed to sustain an indictment. *(See, People v Cornachio,* 46 AD2d 690.)

Although we cannot, on this record, determine that the prosecutor was aware of the misleading nature of Sharkey's testimony at the time it was given to the Grand Jury, it is undisputed that the prosecutor knew at least as of the January 6, 1986 suppression hearing, that Sharkey had not been among the officers who observed and apprehended defendant as he waited for the elevator while carrying the box of stolen property and burglar's tools. Possessing this knowledge, "the prosecutor was *duty bound to obtain a superseding indictment on proper evidence or to disclose the facts* and seek permission from the court to resubmit the case * * * [for] [j]ust as he could not sit by and permit a trial jury to decide a criminal action on evidence known to be false, he could not permit a proceeding to continue on an indictment which he knew rested solely upon false evidence". *(People v Pelchat, supra,* at 107; emphasis added.) While one may quibble with the characterization of Sharkey's testimony as "false", its misleading and inaccurate nature is hardly open to question, notwith-

standing the People's claim that this testimony was merely "conclusory".

Accordingly, we find that the evidence before the Grand Jury failed to meet legal standards, a fact that was known to the prosecutor when he proceeded to trial. A judgment obtained in such circumstances must be reversed, for "the integrity of the criminal justice system [is] impaired if a prosecution may proceed even after the District Attorney learns that jurisdiction is based upon an empty indictment". *(People v Pelchat, supra,* at 108.)

■ Because this case falls within the *Pelchat* exceptions regarding testimony that is legally insufficient, we reject the People's claim that CPL 210.30 (6) bars appellate review. We further reject the People's contention that defendant waived the issue, for his *pro se* motion to dismiss the indictment addressed this matter, albeit somewhat inartfully. Moreover, the defect with which we are here concerned—the validity and sufficiency of an accusatory instrument—is a nonwaivable, jurisdictional prerequisite to a criminal prosecution. *(People v Ford,* 62 NY2d 275, 281-282.)

For these reasons, the indictment must be dismissed. With respect to defendant's remaining contention, which is also the subject of his motion brought pursuant to CPL 440.20 to set aside his sentence, we have considered this argument and find it to be without merit.

Accordingly, the appeal from the judgment, Supreme Court, New York County (Shirley Levittan, J.), rendered May 12, 1986, convicting defendant, after a jury trial, of burglary in the third degree, criminal possession of stolen property in the second degree, and possession of burglar's tools, and sentencing him as a predicate felon, to concurrent terms of imprisonment of 3 to 6 years, 2 to 4 years, and 1 year, respectively, should be reversed, on the law, and the indictment dismissed with leave to resubmit; the appeal from denial of defendant's motion pursuant to CPL 440.20, consolidated herewith by order of this court entered March 6, 1987, should be dismissed as moot.

KUPFERMAN, J. P., SULLIVAN, ASCH and ROSENBERGER, JJ., concur.

Judgment, Supreme Court, New York County, rendered on May 12, 1986, unanimously reversed, on the law, and the indictment dismissed with leave to resubmit. The matter is remitted to the trial court for purpose of entering an order in

favor of the accused pursuant to CPL 160.50, not less than 30 days after service of this order upon the respondent, with leave during this 30-day period to respondent to move and seek any further stay of the implementation of CPL 160.50 as in the interest of justice is required. The appeal from the order of said court, entered on January 21, 1987, unanimously dismissed as moot.