OPINION OF THE COURT
William D. Friedmann, J.
The defendants seek inspection of the Grand Jury minutes and dismissal of the indictment.
*1081 This consolidated indictment raises the complex issue of when does a civil business matter assume criminal proportions?
There are two defendants in this consolidated action, Joseph Manfro and Christopher Rankin. Defendant Manfro owns and operates the "Route Store” in Queens; codefendant Rankin is his employee and allegedly defendant’s general manager. The "Route Store” is a business brokerage firm which specializes in procuring buyers for various delivery routes in the food service industry. Thus, if a deliverer of bread had a route to sell, the defendants would seek to find a buyer who would assume the obligations of this particular route by buying the business. The buyer, in turn, would deliver the bread products to designated stores on that route. The People contend that the defendants utilized the "Route Store” to defraud innocent investors out of large sums of money. Defendants dispute this view, maintaining that they are legitimate businessmen who have served the grocery industry for nine years. They further maintain that any financial disputes arising out of the operation of this business are civil in nature and should not be the subject of a criminal indictment.
I
COMMERCIAL BACKGROUND
The defendants in this case are charged with various crimes in two indictments. Indictment No. 2855/90 sets forth three counts of grand larceny in the third degree in that the defendants stole over $3,000 from named complainants and that these larcenies were the result of a systematic intent to defraud. The intent to defraud constitutes the fourth count of the indictment (Penal Law § 190.65). The second indictment (No. 5945/90) charges the defendants with seven counts of grand larceny in the third degree. It is the theory of the prosecution that these additional thefts were the result of fraud also. Both indictments have been ordered consolidated under indictment No. 2855/90.
Before considering the evidence presented to the Grand Jury it is necessary to examine the nature of defendants’ brokerage business. The defendants maintain that a potential seller would normally contact them and sign a "listing agreement” setting forth the terms of the sale together with the broker’s commission. When a potential buyer became interested in the subject of the listing agreement, he would be *1082 required to sign "an offer to purchase” also known as "an asset sale contract.”
At the time the buyer executes and signs the offer to purchase a down payment would be required. Defendants argue there are no oral contracts for sale and it is standard practice for all parts of each transaction to be in writing.
Defendants further state that the average contract places the burden of obtaining approval from the parent company on the buyer. Finally, in the event the buyer should fail to complete the transaction, the deposit held by the broker would be considered liquidated damages and retained by the seller. Seller, in turn, would authorize the application of any deposit toward the payment of defendant’s commission.
In summary then, defendants maintain that they are operating a standard brokerage business, similar to a real estate brokerage. If a purchaser desires to investigate this business, he must make a deposit pursuant to contract. All contracts must be in writing and if the purchaser defaults, he runs the risk of losing the down payment.
II
COUNTS OF THE INDICTMENT
There are 10 counts of grand larceny in the third degree before the Grand Jury and a single count of intent to defraud. It is by now basic that the Grand Jury may not indict unless the People present evidence establishing a prima facie case of criminal conduct (People v Jennings, 69 NY2d 103, 114). The sufficiency of the People’s presentation is properly determined by inquiring whether the evidence viewed in the light most favorable to the People if unexplained and uncontradicted would warrant conviction by a petit jury (see, People v Pelchat, 62 NY2d 97, 105). To establish a prima facie case of grand larceny in contractual matters, it is necessary that the People establish a larcenous intent (People v Ryan, 41 NY2d 634, 635-636; People v Yonkers Contr. Co., 17 NY2d 322, 333). The defendants maintain that based upon the facts presented to the Grand Jury, the People could not present a prima facie case due to two basic flaws in the District Attorney’s presentation, to wit:
1) The facts were incomplete.
2) The evidence was distorted.
Defendants reasoned that these two flaws prejudiced the Grand Jury to such an extent as to nullify the indictment.
*1083 This court will first consider the defendants’ prima facie case, then consider the two objections.
Ill
PRIMA FACIE CASE
To establish a larcenous scheme, the People presented multiple witnesses. The majority were potential buyers of routes; others were sellers. One witness was a seller who worked for the defendants for approximately one year.
To establish grand larceny in one case, the District Attorney presented the complainant who testified that he first saw the defendants’ ad in a local newspaper. The witness contacted the store by phone and spoke to defendant Manfro. This defendant told the complainant that he had a Wise potato chip route for sale. The owner’s name was not disclosed, but the purchase price mentioned was $120,000. The defendant allegedly told the potential buyer not to consult an attorney. The complainant was further advised that he would have to make a deposit and arrange financing for the rest of the purchase price. $10,000 was then paid in cash by the buyer as a deposit. Defendant allegedly stated that any deposit would be refunded in full if financing could not be obtained.
The complainant was not able to obtain financing and sought his deposit back. The defendant refused to return any part of this sum, stating that he gave the money to the owner of the route for "loss of time on the market.”
A member of the Grand Jury asked the witness if he signed a contract and received an affirmative answer, but the witness stated that he did not have the contract with him at that time.
The seller of this route also testified. He stated that he received a promissory note of $5,000 but never received the money.
A second case presented to the Grand Jury concerned an ad for a Tropicana juice route. The witness stated that he contacted the store by phone, spoke to a salesman who took him out to observe part of the route. A salesman then told the complainant that he would have to make a deposit if he wanted to see the entire route. The total amount sought for the route was $110,000 plus an additional $4,000 for assuming the loan on a new truck. The buyer expressed interest and gave a bank check in the sum of $11,000. He was told that the *1084 money would be refunded if there were any difficulties. An additional check was also paid to the broker for $9,000. Later on the would-be buyer was advised that Tropicana would require additional funds totaling $10,000 plus $2,000 to park the truck on company property. The witness testified that none of these facts were made known to him at the time of making his deposit. To date none of the witnesses’ money has been returned.
A grand juror asked if there was a contract and the witness indicated there was, but nothing was ever put in writing regarding the refund of the deposit. A second grand juror asked if the witness had an attorney and the complainant indicated that he obtained one after his deposit was not returned.
The owner of the Tropicana route testified that he was never told that the Route Store was holding a deposit and never received any money from that store. He later sold his route through another broker. Subsequent testimony presented similar fact patterns which may be summarized as follows:
1) A relatively unsophistocated would-be buyer would see an ad in the local papers indicating that the defendants had a route for sale.
2) Contact would be made with the Route Store by phone and the caller would be given general details regarding the route.
3) The interested party would then go out on part of that route.
4) A deposit would be required, either in cash or bank check, if the purchaser expressed any further interest in the business.
5) An oral statement would be made at this time that all deposits would be refunded if the transaction was not completed.
6) As a general rule, the deal would fail either because the route did not produce the agreed upon income, or required too much time, or some additional expense would increase the purchase price.
7) No deposit money was ever returned and in most cases the seller received none of this deposit money.
A former employee of the store, familiar with the policies of the organization, testified that defendant Manfro praised him *1085 self by stating that he never gave a deposit back and would keep the money if anyone defaulted on the routes.
The People maintain that under the law (see, People v Yonkers Contr. Co., supra; People v North Star Contr. Corp., NYLJ, May 1, 1991, at 26, col 5) they have to satisfy three elements to establish a prima facie case:
A) They have to establish that the defendants made false statements to the complaining witnesses as to the moneymaking ability of the route, the hours required to run the route and that deposits would be returned.
B) That those representations were knowingly false and fraudulent within the meaning of the larceny statutes.
C) That both defendants with larcenous knowledge and intent, participated in making these false representations and claims.
The People now conclude that the evidence presented by the witnesses satisfies all three elements and justifies the Grand Jury findings.
IV
INCOMPLETE PRESENTATION
It is precisely the District Attorney’s facts that the defendants attack or the lack thereof. Both defendants argue that the People’s failure to set forth the complete commercial background of each transaction withholds crucial evidence from the deliberating Grand Jury and negates a prima facie case. Defendants maintain that they are brokers and as such, entered into a standard brokerage agreement for the purpose of earning a commission. These contracts are usual in the industry, setting forth the duties of all parties and have a direct bearing on the intentions of the defendants. Further, the testimony in this case reflects that even if the District Attorney did not feel that such contracts were material, several members of the Grand Jury indicated an interest in these agreements. However, no contracts were introduced into evidence nor did the District Attorney explain the absence of such documents.
An examination of the cases dealing with alleged larceny in contractual matters indicates that documentary evidence was always introduced as a matter of course. In People v Ryan (supra, at 642) the Court of Appeals noted: "[T]hat in this trial involving complex commercial transactions the better practice *1086 is to marshal the entire evidence and present the case to the jury in a clear context”. While these instructions refer to a jury trial, this court notes that the evidence in the Ryan case was mainly documentary, and would be applicable to Grand Jury proceedings. The leading case in the disputed contract area is People v Yonkers Contr. Co. (supra), and the interpretation of agreements figured prominently in that Grand Jury’s deliberations. In the recent Queens case of People v North Star Contr. Corp. (supra), mentioned by the District Attorney in his reply memorandum, the State entered the entire contract (over 50 pages) into evidence. Finally, in People v Mikuszewski (73 NY2d 407), the Court of Appeals in discussing fraudulent efforts in connection with minority business requirements, sets forth the relevant portion of two public works contracts which were considered by the Grand Jury as a necessary background for the crimes involved.
Analyzing the above cases, this court finds that all of them utilized contracts in presenting the alleged crimes to the Grand Jury. The People in this action operated under the theory that the contracts were immaterial because once the deposit was obtained, the fraudulent intent was manifested. The jury may well have concluded that this was the case, however, the statute is clear that "the grand jury is the exclusive judge of the facts with respect to any matter before it.” (CPL 190.25 [5] [emphasis supplied].) Therefore the District Attorney’s failure to introduce the contract into evidence infringed upon the Grand Jury’s power to be the exclusive judge of the facts.
Further, even if the People were justified in not introducing the contracts on the theory of immateriality, there is a second reason why these documents were necessary. That reason is because the Grand Jury deemed them relevant and requested them on several occasions. The integrity of the Grand Jury requires that the prosecution respond to relevant questions (People v Morrell, 134 Misc 2d 1011; People v Montalvo, 113 Misc 2d 471). This would hold true even if the Grand Jury’s request required the introduction of evidence which the People did not originally intend to utilize.
In the case at bar, the District Attorney could easily have obtained all or many of the contracts. However, by deciding not to submit the contracts into evidence in this commercial case, the People deprived those deliberating bodies of the right to determine what relationship, if any, these agreements had to the alleged larcenies or to the intent of the defendants. *1087 These are fundamental issues. Therefore this court must conclude that the People’s failure to introduce these documents deprived the Grand Jury of significant facts in this case and constitutes a serious omission.
V
THE EVIDENCE WAS DISTORTED
Defendants’ second challenge maintains that the District Attorney slanted the presentation of the case by concentrating almost exclusively on the initial deposits made by the buyers and the defendants’ failure to return same. Since the District Attorney failed to present any contracts or expert witnesses to fill in the commercial background, the defendants maintain that this emphasis produced a distorted effect.
A review of the Grand Jury minutes supports this contention. While the District Attorney is free to present his evidence in any fashion he chooses (see, Matter of Morgenthau v Altman, 58 NY2d 1057) his presentation must be a fair and impartial one. Historically the Grand Jury has wide powers of investigation and inquisition (Branzburg v Hayes, 408 US 665). However, these powers can only function if that body has " 'enough information to enable it intelligently to decide whether a crime has been committed’ ”. (People v Valles, 62 NY2d 36, 38.) By stressing the deposits made, the District Attorney indicated that the contracts, if any, were all oral in nature and that any written documents were immaterial. This clearly distorted the evidence and deprived the Grand Jury of the background information needed for intelligent deliberation.
VI
CONCLUSION
In conclusion, this court finds that the failure of the District Attorney to present the written contracts and the overemphasis on the deposits diminished the Grand Jury’s fact-finding role and distorted their deliberations. A legendary Greek ruler, Procrustes, is remembered for his strange hospitality. He would invite guests to his house and force them to sleep on a special bed. If the guests were too tall, Procrustes would cut off their limbs and if they were too short, he would stretch them to fit the bed. The People’s presentation of the present indictment may be deemed Procrustean in nature, since in a *1088 commercial transaction they have stretched the criminal elements to fit the facts of their case and cut off the civil aspects. This treatment has so seriously prejudiced the defendants and impaired the integrity of the Grand Jury that the indictment must be dismissed.
The District Attorney is granted leave to resubmit both indictments before another Grand Jury in order to supply the proper commercial background which was lacking in this case. Defendants’ bail is continued as previously set.