Titone, J.
(dissenting). Following defendant’s arrest, she gave a detailed statement to police in which she indicated that the victim had been stabbed during the course of a struggle that was initiated when the victim brandished a knife. The majority holds that the prosecutor who presented the People’s case to the Grand Jury had no obligation either to present this exculpatory evidence or to advise the Grand Jury on the justification defense. This holding is objectionable because its underlying rationale is obscure and it utterly ignores the prosecutorial duty of fairness that this Court has previously recognized. Because I conclude that that duty was breached in this case in a manner that both significantly prejudiced the accused and impaired the Grand Jury’s ability to perform its essential function, I dissent from the majority’s holding.
Initially, the Appellate Division’s conclusion that the prosecutor was not required to introduce defendant’s statements because they were inadmissible hearsay was fallacious. Whether or not the rule against hearsay is strictly applicable to Grand Jury proceedings,[1] that rule did not prohibit the *516 People’s use of defendant’s statement here. It is well established that "the admissions of a party-opponent may be introduced without satisfying any of the requirements for declarations against interest” (2 McCormick, Evidence § 316, at 336 [Practitioner’s 4th ed]). Further, "while frequently admissions are against interest when made, they need not be and may, in fact, have been self-serving” (id.). Indeed, the contrary rule would unnecessarily burden the People because it would even preclude the use of a suspect’s false exculpatory statements as part of the People’s evidence-in-chief at a criminal trial.
As applied to this case, these elementary principles mean that the People were entitled to introduce all of the statements made by defendant as part of their Grand Jury case against her. Since they were made by the prosecution’s "party opponent” — the target of the Grand Jury presentment — they were admissible under the hearsay exception for party admissions and there was no bar to their introduction by the People in the Grand Jury.
Similarly unpersuasive is the majority’s somewhat cryptic analysis based on the evidentiary rules governing Grand Jury proceedings. The majority cites and describes the "standards” established by the provisions of CPL 70.10 (1), 190.30 (1) and 190.65 (1) and asserts that "the general criminal trial court evidentiary rules normally apply to Grand Jury proceedings” (majority opn, at 513). However, the majority never explains how those standards and rules preclude the introduction of defendant’s otherwise admissible statement or excuse the prosecutor’s failure to introduce them here. In the absence of a valid articulable evidentiary justification for the prosecutor’s actions, the focus of the inquiry must be on whether the obligation of prosecutorial fairness imposed a duty to introduce defendant’s exculpatory statements under the circumstances of this case. Citing People v Isla (96 AD2d 789), the majority has answered that question in the negative on the ground that the statements "were not a part of a single statement in which inculpatory and exculpatory thoughts *517 were expressed” (majority opn, at 513). However, the prosecutor’s duty of fair dealing is certainly not limited to avoiding the indiscretion for which the prosecutor in Isla was chastised. Nor is it confined to the precise obligation identified in People v Pelchat (62 NY2d 97, 105) — to refrain from using false information to obtain an indictment — as the majority suggests. Those specific prosecutorial peccadillos were merely the factual backdrop that prompted the Pelchat Court and the Isla Court to articulate the general principle that prosecutors conducting Grand Jury proceedings have an obligation to proceed with at least a measure of candor and fairness. The obligation itself was never meant to be defined strictly in terms of the factual settings in which it was first considered (see, People v Lancaster, 69 NY2d 20, 26). The law governing the ethics of public officers is neither so trivial nor so arbitrary.
As was acknowledged in People v Pelchat (62 NY2d 97, 105, supra), the prosecutor’s duty of fairness is premised on the "familiar doctrine that a prosecutor serves a dual role as advocate and public officer [and is] charged with the duty not only to seek convictions but also to see that justice is done.” Critical to an understanding of this duty is the relationship that exists between the important function served by the Grand Jury in our system and the prosecutor’s unique role in the Grand Jury’s execution of that function. The Grand Jury exists to protect citizens from needless and unfounded prosecutions as well as to investigate crimes (see, e.g., People v Lancaster, supra, at 25; People v Ford, 62 NY2d 275, 282; People v Iannone, 45 NY2d 589, 594). For the most part, the Grand Jury fulfills this responsibility passively, by sifting and evaluating the evidence presented to it by the prosecutor. Thus, as a practical matter, the Grand Jury ordinarily relies on the prosecutor to apprise it of all of the facts it needs to determine whether an indictment should issue. In this regard, the prosecutor’s office operates as a filter through which the material that the Grand Jury will use to make its determination must pass.
It is clear that the People have broad discretion in presenting their case to the Grand Jury and that they are not obligated either to search for evidence favorable to the defense or to present all of the evidence in their possession that might be favorable to the accused (People v Lancaster, supra, at 25-26). However, there are some circumstances in which the exculpatory evidence is so essential to a complete understand *518 ing of the case that the prosecution’s failure to disclose it can actually prevent the Grand Jury from functioning as an intelligent and informed decision-making body. In such cases, withholding the evidence precludes the Grand Jury from performing its essential role as a bulwark against prosecutorial excess (see, People v Lancaster, supra, at 25). Those are the cases in which the duty of fair dealing is operative.
Manifestly, this case presents a prime example of when the duty of fair dealing requires the People to make full disclosure to the grand jurors of the exculpatory evidence they possess. Defendant’s transcribed account of the incident (quoted at majority opn, at 512), which represents the only account by an eyewitness, suggests either that the victim was killed accidentally or that the accused acted in self-defense after the victim came at her with a knife. The suggestion that the justification defense was implicated is particularly significant because "whenever justification is sufficiently interposed by the defendant, the People must prove its absence to the same degree as any element of the crime” (People v McManus, 67 NY2d 541, 546-547). Further, justification is a defense, not an affirmative defense, and, as such, specifically permits the use of force under certain statutorily defined circumstances. Thus, if the use of physical force is shown to have been justified, the conduct is not criminal at all. "[S]uch conduct [is] entirely lawful” (id., at 546). As we noted in People v Lancaster (supra, at 27-28), this is one of those cases in which prosecution may be "needless” and a fully informed Grand Jury is essential so that the merits of the People’s case can be intelligently evaluated.
Moreover, when combined with the way in which the other evidence was presented, the prosecutor’s failure to disclose defendant’s exculpatory statements so distorted the case against her as to make a fair Grand Jury assessment all but impossible. The prosecutor elicited from the arresting officer that defendant had made jealous remarks indicating a motive to harm the victim. Additionally, he elicited that defendant had shown no signs of injury at the time of her arrest, thereby suggesting that there had been no real struggle and that defendant had been the aggressor from the outset.
Even more significantly, as a result of the testimony of two police officers, the Grand Jury was exposed to evidence that defendant had made one inculpatory statement and one statement that had ambiguous implications. The arresting officer *519 testified that when he first arrived at the scene of the incident, defendant stated: "I stabbed him because he tried to beat on me.” Another officer testified that he heard defendant screaming at the precinct that she had stabbed and killed her husband. Viewed in the light of defendant’s detailed statements about how she had attempted to grab the victim’s knife and how the knife had entered his side as the couple struggled, these earlier fragmented declarations may have seemed to the grand jurors to be the relatively innocuous ravings of a hysterical woman fresh from a shocking and horrifying event. However, viewed in isolation and without benefit of the subsequent statements, they could only have been seen as damning admissions of defendant’s own guilt.[2]
Finally, the distortion of the process arising from the prosecutor’s omission of defendant’s exculpatory statements is made evident even by the majority’s own rationale for affirmance. No one disputes that a justification charge would have been required under the rationale in People v Lancaster (supra) if defendant’s exculpatory statements had been placed before the Grand Jury. The majority’s sole reason for concluding that such a charge was not required in this case is that there was insufficient evidence before the Grand Jury to warrant the charge. Although that conclusion could fairly be disputed on its merits,[3] its legal accuracy is less important than is its value as an eloquent demonstration of how important defendant’s statements were to a fair evaluation of the events underlying the charges — and of how damaging the omission of those statements was to the integrity of the Grand Jury’s deliberative process.
In sum, whether the stabbing was a deliberate and criminally culpable act or was instead an accidental or justifiable one was the question that lay at the heart of this prosecution which arose out of a violent domestic melee. Yet, by picking and choosing among defendant’s own statements and present *520 ing a highly selective version of the evidence, the prosecutor managed to effectively eliminate that question from the grand jurors’ consideration. As a consequence, the Grand Jury process was hopelessly skewed and the resulting indictment was fatally defective. Accordingly, I would reverse the order of the Appellate Division and reinstate the Supreme Court order dismissing the indictment.
Judges Simons, Bellacosa and Levine concur with Judge Smith; Judge Titone dissents and votes to reverse in a separate opinion in which Chief Judge Kaye and Judge Hancock, Jr., concur.
Order affirmed.

. Neither CPL 70.10 (1) nor CPL 190.65 establish that the rule against hearsay is to be strictly applied in Grand Jury proceedings. Read together, those statutes merely provide that the evidence necessary to sustain an indictment must include as a minimum competent and admissible proof to support every element of the offense charged as well as to establish reasonable cause to believe that the accused is the person who committed that offense. CPL 190.30 (1), on which the Appellate Division relied, provides that, with certain enumerated exceptions, the provisions of CPL article 60, *516 including CPL 60.10 (invoking the civil rules of evidence), apply to Grand Jury proceedings. However, as the Practice Commentary observes, it is "an oversimplification * * * to conclude that New York grand jury rules of evidence are identical to those at trial save for the [enumerated exceptions]” (Preiser, Practice Commentaries, McKinney’s Cons Laws of NY, Book 11 A, CPL 190.30, at 242). Accordingly, the Appellate Division’s blanket assumption that the rule against hearsay should be rigidly applied in Grand Jury proceedings is questionable.

. Contrary to the majority’s assertion (majority opn, at 515), defendant’s collective statements did not contain "at least three different accounts of the events surrounding her husband’s death.” Although defendant alternatively told the police that the victim had fallen on the knife to get back at her and that she had stabbed him, neither of these statements are fundamentally inconsistent either with each other or with the more detailed account of events defendant later gave, particularly when viewed in light of the distraught and confused state in which defendant made the statements and the emotional complexity of the circumstances leading up to the stabbing.

. Arguably, defendant’s statement that she had stabbed the victim because he "beat on” her was sufficient to warrant a justification charge.