OPINION OF THE COURT
Lorin M. Duckman, J.
Defendant was initially charged with one count of obstructing governmental administration in the second degree (Penal Law § 195.05). The accusatory instrument was subsequently superseded, charging the defendant with two counts of attempted criminal tampering with physical evidence (Penal Law §§ 110.00, 215.40 [2]), two counts of obstructing govern *1031 mental administration in the second degree (Penal Law § 195.05) and two counts of removal of human remains from the place of death (NY City Health Code § 205.30 [a]).*
The superseding information contains a statement by Detective Alfred Smith, made pursuant to Penal Law § 210.45, that Mr. Pappas admitted to him that on March 5, 1994 at 12:00 p.m. he removed the "remains” of two persons from inside his residence and disposed of the "remains” by placing them in the trunk of a car without notifying the police or other authority. Detective Smith also alleges that he observed said human "remains” recovered from the trunk of a car on March 5, 1994 at 68th Street and Shore Road.
Defendant has moved pursuant to CPL 170.30 (1) (a); 170.35 (1) (a) and 170.40 (1) (e) to dismiss the accusatory instrument and to suppress the statements made to Detective Smith on March 8, 1994 and the statement to Assistant District Attorney Kelly on March 9, 1994 at the Squad Office of the 68th Precinct.
BACKGROUND
On March 5, 1994, the dead bodies of two women were found in the trunk of a car at 68th Street and Shore Road in Brooklyn. Somehow the investigation focused on Mr. Pappas.
On March 8, 1994, Mr. Pappas appeared at the 68th Precinct at 10:40 p.m. and was questioned by Detective Smith concerning events of February 20, 1994. A complaint follow-up "No. 35,” reflecting the substance of his statements at this interview, has been provided to defendant and to the court.
Following that statement, at 1:05 a.m. on March 9, 1994, Mr. Pappas was questioned by Assistant District Attorney Tracy Kelly. An audiotape and transcript of that statement has been provided to the court.
Mr. Pappas was served with a desk appearance ticket on April 14, 1994, charging him with two violations of the New York City Health Code. Due to a misunderstanding as to the time he was to appear, defendant appeared in court late in the day on May 18, 1994.
Two statement notices pursuant to CPL 710.30 (1) (a) were served by mail on Mr. Pappas’ attorney on June 1, 1994. In *1032 the first, dated May 15, 1994, it is alleged that in a statement to Detective Smith on May 8, 1994 at 8:40 p.m., "[Defendant] admitted to paying someone to dispose of two bodies who died in his apt [sic] [and] also admitted to not reporting the deaths.” In the second, dated May 31, 1994, it is alleged that he made a statement, recorded on audiotape, to Assistant District Attorney Kelly, the substance of which is: "the victims were doing drugs prior to coming to his apartment and they apparently overdosed in his apartment. Deft [sic] stated he panicked because they were both unconscious for a long period of time so he telephoned someone and asked this person to send people over to get rid of the two victims. The defendant further stated that the two male whites came to his apartment and took the victims out.”
When defendant returned to court on June 15, 1994, an accusatory instrument superseding the first was filed. Two counts of attempted criminal tampering with physical evidence (Penal Law §§ 110.00, 215.40 [2]), one count of obstructing governmental administration in the second degree (Penal Law § 195.05) and two counts of removal of human remains from the place of death (NY City Health Code § 205.30 [a]) were added. One count of obstructing governmental administration was retained.
The motions which are being considered in this order are directed at the instrument containing these charges.
Defendant then filed an omnibus motion seeking a bill of particulars and discovery, dismissal of the charges on various grounds and a request for a hearing to suppress all statements which were noticed pursuant to CPL 60.45.
The People responded by providing additional police reports relating to the investigation conducted by the police after the car containing the two dead women’s bodies was found. An additional summary of the statement given to Assistant District Attorney Kelly was provided: "The defendant stated that the victims were doing drugs prior to coming to his apartment. The victims apparently overdosed in defendant’s apartment. The defendant stated that he panicked because both victims were unconscious for a long period of time so he telephoned someone and asked this person to send people over to get rid of the two victims. The defendant further stated that two white males came to his apartment and took the victims out of his apartment.”
The "AP” Judge decided that the request for discovery and *1033 particulars had been satisfied and without reaching the issues concerning the motions to dismiss sent the case to a Jury Part for a Huntley/Wade/Dunaway hearing.
On September 12, 1994, a hearing was held. Detective Smith testified concerning the circumstances surrounding his questioning of Mr. Pappas, his advising Mr. Pappas of his Miranda warnings, and the substance of his statement. The audiotape of the statement given before Assistant District Attorney Kelly was also played.
At the conclusion of the hearing, Mr. Pappas’ attorney conceded that the statement given by his client had been preceded by adequate Miranda warnings and that his client voluntarily agreed to speak with Detective Smith. He offered no additional arguments why the motion to suppress should be granted.
Although Mr. Pappas’ attorney did not challenge the voluntariness of the statement, he requested an opportunity to make additional motions. He consented to the denial of the motion to suppress the statements.
The case was fourth called to set a trial date. The prosecutor announced that additional discovery would be provided consisting of an autopsy report which stated that the cause of death was accidental.
The case was adjourned to October 13, 1994. On that date, motion papers from Mr. Pappas appeared, particularizing the grounds upon which he had moved for dismissal in his original moving papers. The People opposed dismissal of the charges. After oral argument both sides were requested to present additional arguments in writing.
On November 4, 1994, additional oral arguments were made. The People conceded that the allegation that defendant’s acts "prevented pronouncement of death and determination of death by the medical examiner’s office and interfered with the investigation conducted by the detective,” even if true, did not make out the elements of the crime of obstructing governmental administration. (See, People v Case, 42 NY2d 98 [1977].) The two charges were dismissed.
CONTENTIONS
Defendant has only offered conclusory arguments to support his motion to dismiss in the interest of justice pursuant to CPL 170.40 (1) (e). Therefore, that motion is denied.
In moving to dismiss pursuant to CPL 170.30 (1) (a), he *1034 contends that the accusatory instrument is defective on its face because it contains a blatant falsity. He points out that during the Huntley hearing, Detective Smith, the officer whose statements provided the factual allegations in the accusatory instrument supporting the charges of tampering with physical evidence, testified, under oath, that the defendant never admitted to disposing of the bodies and putting them in the trunk and that the complaint was not true.
The defendant also argues that the complaint is insufficient because no proof exists that the women were dead when they were taken from the apartment, so defendant could not have knowingly been removing human remains from the place of death; and, further, that since the individuals were not dead when they left his apartment, no official proceeding could have been contemplated at which his acts were designed to prevent the evidence from appearing.
The People contend that the words in the complaint are not an exact quote of defendant’s statements, but merely a recitation of the substance of his statement. It is the People’s position that "all the factual statements * * * in the complaint are supported by evidence and any confusion on the part of the detective is the result of an inartfully drafted, but legally sufficient Complaint [sic]. ”
The People say that the defendant admitted in his audio-taped statement, in substance, to summoning, watching and paying the two men who removed the bodies from his residence. They use the term bodies to be synonymous with the remains of a dead person and suggest that because someone died in someone’s apartment, the death would be the subject of some unspecified official proceeding.
DISCUSSION
To be legally sufficient, a misdemeanor information and any supporting depositions must set forth (a) nonconclusory allegations providing reasonable cause to believe that the defendant committed the offense charged and (b) nonhearsay allegations of fact which "establish, if true, every element of the offense charged”. (CPL 100.40 [1] [c]; 100.15 [3]; People v Dumas, 68 NY2d 729 [1986]; People v Alejandro, 70 NY2d 133 [1987].)
A person is guilty of tampering with physical evidence when: "[Relieving that certain physical evidence is about to be produced or used in an official proceeding or a prospective official proceeding, and intending to prevent such production *1035 or use, he [or she] suppresses it by any act of concealment, alteration or destruction, or by employing force, intimidation or deception against any person.” (Penal Law § 215.40 [2].)
A person is guilty of an attempt to commit a crime "when, with intent to commit a crime, he [or she] engages in conduct which tends to effect the commission of such crime.” (Penal Law § 110.00.)
An essential element of the crime charged in the information — defendant’s knowledge that the women were evidence about to be used or produced in an official proceeding is supported solely by the defendant’s own admission; corroboration of that statement is necessary in order to satisfy the requirement that the information presents a prima facie case. (GPL 60.50.) Every detail of the admission need not be corroborated; what is required is some proof, of whatever weight, that the offense charged has been committed by someone. (People v Daniels, 37 NY2d 624, 629 [1975].)
The factual portion of the accusatory instrument states that:
"Deponent states that the deponent is informed by defendant’s own statements that at the above time and place [March 5, 1994, at 12:00 p.m., at 67 93rd St.], defendant did remove the remains of two persons from inside the defendant’s residence and dispose of said remains, placing them in a trunk of a car, without notifying police or any other authority, without the assistance of police or any other authority and without filing a certificate of death with the department of health.
"Deponent further states that the acts above prevented the pronouncement of death and determination of death by the medical examiner’s office and interfered with the investigation conducted by the deponent.
"Deponent further states that the deponent observed said human remains recovered from the trunk of a car on March 5, 1994 at 68th Street and Shore Road.”
The accusatory instrument is devoid of even the slightest proof that the crime charged was committed. The People concede that the admission, as drafted, is not a verbatim statement, but merely a recitation of the substance of what the defendant said. With this in mind, the fact that the deponent found human remains in the trunk of a car does not corroborate the admission that the women were dead when the defendant removed them. No facts independent of the *1036 admission are offered to establish that the women were dead while inside the apartment. Moreover, no facts regarding the time the bodies were recovered were offered which would permit the inference that the women were dead inside the apartment.
In addition, the element of the crime of tampering with physical evidence that the defendant believed that physical evidence was about to be produced or used in an official proceeding is not sufficiently pleaded. (See, People v Hayes, 179 AD2d 438 [1st Dept 1992]; People v Nicholas, 70 AD2d 804 [1st Dept 1979].) In Hayes, the defendant assisted another in carrying cargo enclosed in paper bags from an apartment. The dismembered and decapitated bodies of the victims were later found in the bags. In Nicholas, the death was caused by gunshot wounds. The defendant assisted another in moving a body from an apartment, placed it into an awaiting car, and drove off. The body was later found in a viaduct 10 blocks from the apartment. In both cases, due to the condition of the bodies and the manner of death and disposal, it was not unreasonable to conclude that a prospective official proceeding could be contemplated.
Here, however, with no proof that the women were dead and no proof that the defendant had anything to do with their accidental overdose, no official proceeding could have been constituted or contemplated. The People, as noted, do not suggest at what type of proceeding defendant’s acts prevented the evidence from being introduced.
Consequently, the accusatory instrument fails to make out a prima facie case and the defendant’s motion is granted.
It should be noted that while we are constrained in deciding motions to dismiss for facial sufficiency to stay within the four corners of the charging papers (People v Pelt, 157 Misc 2d 90 [Crim Ct, Kings County 1993]; People v Fink, NYLJ, May 22, 1992, at 23, col 4 [Crim Ct, NY County]), an accusatory instrument based upon sworn incorrect statements which the affiant says are not true under oath should not serve as the basis for a prosecution. (See, CPL 170.45, 210.45; People v Pelchat, 62 NY2d 97 [1984].)
In People v Pelchat (supra), the Court of Appeals reversed the defendant’s conviction, after his plea of guilty, of criminal possession of marihuana in the first degree and dismissed the indictment as fatally defective. The Court found that the only evidence before the Grand Jury connecting the defendant to *1037 the crime was the testimony of a police officer, who subsequently informed the prosecutor, prior to the defendant’s plea, that he did not observe the defendant engage in any criminal activity, and that he identified the defendant as a participant in the crime because he misunderstood the question asked by the prosecutor before the Grand Jury. The Court concluded the "Grand Jury could indict only upon legally sufficient evidence and when the prosecutor learned of the error while the proceedings were still pending, before defendant’s plea, he was obliged to correct the error by obtaining a new accusatory instrument.” (Supra, at 99.)
In the case at bar, the factual circumstances surrounding the removal and disposal of the purported "bodies” in the accusatory instrument differs quite significantly from the testimony adduced at the Huntley/Wade/Dunaway hearing and the discovery furnished by the People.
At the combined hearing, Detective Smith testified that the accusatory instrument as drafted was not true, that the defendant never said the women were dead, and the removal of the bodies did not take place as stated in the accusatory instrument.
In fact, none of the two statements made by the defendant contain admissions that he knew the women were dead when they were carried from his apartment. Both notices provided pursuant to CPL 710.30 (1) (a) distort the statements in Detective Smith’s DD-5 and the audiotaped statement to Assistant District Attorney Kelly.
In Detective Smith’s written complaint follow-up, the defendant never refers to the women as bodies; stressing that he thought that they were unconscious and still breathing, he tells Detective Smith he summoned the men to remove the women to enable them to receive medical treatment.
In his statement to Assistant District Attorney Kelly, defendant indicated that he did not think they were dead; after an hour with them, he thought they were still breathing, but in need of help; and even when the guys came to pick up the women, he still thought that they were alive. Moreover, in none of the defendant’s statements were the women referred to as victims.
The procedural rules prescribed in CPL 210.45 with respect to making, considering, and disposing of a motion to dismiss an indictment are also applicable to a motion to dismiss an information. (See, CPL 170.45.) Thus, the principles enunci *1038 ated in People v Pelchat (supra), albeit with respect to indictments, are controlling.
Given the prosecutor’s knowledge of these circumstances and the fact that the accusatory instrument is false as drafted, the prosecutor is obliged to correct the error by obtaining a new accusatory instrument.
Likewise, the charge of removal of human remains is facially insufficient. New York City Health Code § 205.23 (a) provides in pertinent part that: "No person shall remove human remains from the place of death * * * unless a certificate of death * * * and a confidential medical report, if required, have been filed with the Department or delivered to a funeral director, undertaker or to the person in charge of the City mortuary”.
Again, this charge is based on the defendant’s admission that he "removed the remains of two persons from inside [his] residence and dispose[d] of said remains, placing them in a trunk of a car, without notifying the police or any other authority”. No corroboration, however slight, exists to establish that the defendant removed "remains” from his residence.
CONCLUSION
Wherefore, the defendant’s motion to dismiss the accusatory instrument in the interest of justice is denied. The defendant’s motion to dismiss the accusatory instrument on the grounds that it is defective and facially insufficient is granted.

 On November 4, 1994, the People conceded that New York City Health Code § 205.30 (a) was incorrectly charged. The People amended the accusatory instrument charging the defendant with violating New York City Health Code § 205.23 (a).