THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v THOMAS MURRAY, Appellant.

First Department, July 16, 1987

### APPEARANCES OF COUNSEL

*James B. McCarthy* for appellant.

*Steven Chananie* of counsel *(Susan Corkery* with him on the brief; *Robert M. Morgenthau, District Attorney,* attorney), for respondent.

## OPINION OF THE COURT

ROSENBERGER, J.

The facts are reasonably set forth in the dissent by Justice Smith.

There was no deprivation of the defendant's right to counsel by the actions of the police or the District Attorney. It is clear that when a defendant is represented by counsel in a pending case any statement taken from him by law enforcement authorities, in the absence of his attorney, may not be used against him, even in a totally unrelated case in which he is unrepresented by counsel. *(People v Bartolomeo,* 53 NY2d 225 [1981]; *People v Rogers,* 48 NY2d 167 [1979].) Since those cases, the Court of Appeals has made clear its concerns which underlie those holdings. In *People v Colwell* (65 NY2d 883, 885 [1985]), the court stated: "A primary concern underlying *Rogers* was that a defendant could incriminate himself on the *pending charge,* on which he is represented, even though the questions ostensibly concern unrelated charges. As this court noted, 'it is the role of [the] defendant's attorney, not the State, to determine whether a particular matter will or will not touch upon the extant charge' *(People v Rogers,* 48 NY2d 167, 173 * * *). This same concern is not present where the defendant already stands convicted and is represented only on an appeal from the conviction. After conviction and sentence, prosecutorial authorities do not have the same motivation to gather evidence incriminating the defendant on charges for which he has already been convicted, and an appellate court generally considers only the issues raised by the record of the judgment of conviction. In most cases, a statement bearing on charges that are already the subject of a conviction would be of little use to the prosecution as a case wends it way—often for years—through the appellate process" (emphasis added).

The instant case presents facts more strongly supporting the admissibility of the defendant's statement. He was not represented by counsel on any pending case since he was not the subject of any pending case. There was no extant charge upon which his statement could possibly touch. The *Colwell* case would make a stronger argument for the extension of the right to counsel protections to the defendant there than does the instant case to this defendant. He could no longer be prosecuted. Colwell's case was on appeal. There existed a genuine possibility that his conviction could be reversed, his case remanded, and a new trial ordered.

The defendant argues, in essence, that he had a right to be prosecuted for his shoplifting misdemeanor; he had a right not to have the charges against him dismissed. This argument skews the reasoning upon which both *People v Rogers (supra)* and *People v Bartolomeo (supra)* are based. It would change a genuine concern for protecting the rights of a defendant who is the subject of a pending unresolved criminal case to the conferring of a benefit upon such a person. It would, in logical extension, make it potentially desirable to be, at all times, a defendant in a pending misdemeanor prosecution. It would recognize the status of defendant to be a benefit so valuable as to be inalienable, except with the consent of the beneficiary. A person accused of a misdemeanor is not absolutely entitled to a legitimate expectation of prosecution. This plainly was not the intent of the court *(People v Colwell, supra)*.

The reasons for the prosecutor's moving to dismiss the shoplifting case are immaterial. They are not limited by CPL 170.40. As was observed by the Appellate Division, Third Department, speaking through Justice Weiss in *People ex rel. Doe v Beaudoin* (102 AD2d 359, 365 [1984]): "It is well established that the District Attorney enjoys broad discretion over who, what and when to prosecute *(People v Di Falco* [44 NY2d 482], p 486 [1978]; *People v Muka,* 72 AD2d 649, 650; *People v Putland,* 102 Misc 2d 517, 523). The responsibilities attendant the position of this duly elected official necessitate 'the exercise of completely impartial judgment and discretion' *(People v Di Falco, supra,* p 487). Indeed, respect for the basic separation of powers lodged in the executive, legislative and judicial branches of our government compels this court not to interfere with the prosecutor's authority *(Matter of Hassan v Magistrates' Ct.,* 20 Misc 2d 509, app dsmd 10 AD2d 908, mot for lv to app dsmd 8 NY2d 750, cert den 364 US 844)."

The Court of Appeals recognized this prosecutorial discretion in *People v Di Falco* (44 NY2d 482, 487, *supra),* when it said: "Indeed the District Attorney may choose not to pursue the matter at all."

Accordingly, the judgment of Supreme Court, New York County (Fraiman, J.), rendered September 5, 1984, convicting appellant of murder in the second degree and robbery in the first degree and sentencing him to two concurrent indeterminate prison terms of from 15 years to life on the murder count, and from 5 to 15 years on the robbery count, should be affirmed.

Smith, J. (dissenting). In this case, after the right to counsel had attached, the police and District Attorney sought to and did deprive defendant of that right. This was a clear violation of the right to counsel guaranteed by article I, section 6 of the NY Constitution. It is also a violation of *People v Rogers* (48 NY2d 167 [1979]). Accordingly, I would reverse the conviction and remand the case for a new trial at which the defendant's statement should be excluded.

Defendant was convicted after a jury trial of murder in the second degree (Penal Law § 125.25 [3]) and robbery in the first degree (Penal Law § 160.15 [3]) and sentenced to concurrent indeterminate prison terms of from 15 years to life on the felony murder count and from 5 to 15 years on the robbery count. Prior to trial, a motion to suppress a videotaped statement was denied.

The facts are as follows. The body of the deceased, Olav Kjonstad, was discovered on June 2, 1983 in his apartment. The medical examiner determined that he died of internal and external bleeding caused by multiple stab wounds. The approximate date of death was May 31 or June 1, 1983. On June 28, 1983, Detectives Lachenmeyer and Canavan learned that Frank Bruno, a defendant in an unrelated case, who was at the Manhattan central booking facility, had knowledge of a robbery which ended in the stabbing of the victim. On July 9, 1983, Detective Canavan interviewed Bruno at Rikers Island Prison. Bruno stated that he ran into defendant and a John Flynn in Washington Square Park. There, defendant described a scenario involving a prearranged plan in which Flynn picked up Kjonstad in Washington Square Park and accompanied Kjonstad to his apartment. Kjonstad became alarmed when Flynn buzzed him, the defendant, in. As Kjonstad attempted to flee, Flynn dragged him back into the apartment. Defendant told Bruno that as he left the apartment, there was "blood in the hallway and blood all over the place."

The detectives later learned that defendant had an active shoplifting case in Manhattan Criminal Court. When defendant failed to appear for his November 9, 1983 court date, a bench warrant was issued. Defendant eventually surrendered on the November bench warrant. He was released on his own recognizance to return on December 6, 1983. Following a conversation on December 5, 1983, Assistant District Attorney (ADA) Kitsis, who was handling Murray's shoplifting case, allegedly got the mistaken impression that defendant was a witness to the Kjonstad homicide/robbery case, and was un-

willing to talk to the police unless the shoplifting case was disposed of. ADA Kitsis then spoke to the attorney prosecuting the Kjonstad homicide case, ADA Garay, and informed her that he would dispose of the shoplifting case the next day by offering defendant a plea to disorderly conduct. On the misdemeanor file Kitsis wrote "DISPOSE OF THIS CASE AT ALL COSTS EVEN IF WE HAVE TO DISMISS IT OUTRIGHT * * * Deborah Garay has an on-going murder investigation and the police want to talk to this defendant (they may be in court). He won't talk to them while he has an open case."

Detectives Canavan, Finelli and Lachenmeyer appeared in court on December 6, 1983 after receiving notice of Murray's appearance on that date from ADA Garay. In the courtroom ADA Cornett Lewers was approached by the detectives, who informed him that they wanted to talk to defendant about a homicide investigation and asked if Lewers could dispose of the case. Lewers informed them that Murray's counsel had not yet arrived. After the third inquiry ADA Lewers and Kitsis, who was assigned that day to the Part, conferred and decided to have the shoplifting case called. The ADAs moved to have the case dismissed "on a broad range of factors." The court granted the motion.

As defendant and his father left the courtroom, the detectives asked them if they would talk to them at the station house. Both agreed. At the station house the detectives placed defendant in a separate room and read him his *Miranda* rights. He signed a form to that effect. The detectives then informed defendant that an informant had implicated him in a robbery of Kjonstad. Within 20 minutes, defendant confessed to his participation in the robbery and signed a confession. At that point, the detectives informed defendant that he was under arrest for murder in the second degree. He was again read his *Miranda* rights. Defendant's father was notified of the arrest, but was not told that his son was charged with murder. Defendant was again read his *Miranda* rights before making a videotaped statement. In that statement defendant admitted robbing Kjonstad but denied he saw him bleeding or that there was blood in the apartment. Defendant, still in custody, retraced the day of the robbery. He took the detectives to 11 Fifth Avenue instead of 14 Fifth Avenue, where the robbery/murder occurred. When he was brought to 14 Fifth Avenue, he did not recognize the place.

Defendant's motion to suppress his confession was denied by the lower court. It held that defendant's shoplifting case was

dismissed for the sole purpose of allowing detectives to question defendant without the presence of his attorney and that defendant was in custody when he arrived at the police station. The trial court, nevertheless, held that the confession was proper since defendant knowingly and voluntarily waived his right to counsel.

On appeal, defendant contends that his statement and confession should have been suppressed because he never voluntarily waived his *Miranda* rights.

Where a defendant is represented by counsel on a given case, the police may not question him on an unrelated matter in which he does not have an attorney. *(People v Rogers,* 48 NY2d 167, *supra.)* If they do and the defendant makes a statement, it must be suppressed. *(People v Rogers, supra; see also, People v Bartolomeo,* 53 NY2d 225 [1981].) Additionally, once the right to counsel attaches, it cannot be waived unless the attorney is present *(People v Bartolomeo, supra; People v Rogers, supra).* The detectives learned that defendant was represented by counsel in the shoplifting case soon after he became a suspect in the Kjonstad murder/robbery case. The shoplifting case, as the trial court found, was disposed of for the sole purpose of allowing the police to question the defendant in the absence of his attorney. Further, as found by the trial court, the defendant was in custody at the time he was interrogated at the police station. The collaboration between the detectives and prosecutors constituted a blatant effort to circumvent the *Rogers* and *Bartolomeo* decisions. As a result of this collaboration, the defendant was effectively deprived of counsel at the time of his alleged "waiver" and did not therefore knowingly and voluntarily waive his right to counsel. The case at bar is not analogous to *People v Colwell* (65 NY2d 883 [1985]), a case relied on by the majority. There, the Court of Appeals held that the *Rogers* requirements do not extend to a situation where defendant is represented on appeal from a criminal conviction. In that case the criminal case reached a conclusion following the normal court process. In the case at bar, the shoplifting case was hastily dismissed in the absence of defendant's attorney as part of a scheme to deprive defendant of counsel. Although the People argue that they dismissed the case on the mistaken belief that defendant was only a witness to the homicide/robbery, this assertion is unconvincing.

It is true that *People v Colwell* contains a statement that "[a] primary concern underlying *Rogers* was that a defendant

could incriminate himself on the pending charge, on which he is represented, even though the questions ostensibly concern unrelated charges." (65 NY2d, *supra,* at 885). As the People argue, there is no longer any chance that a defendant will incriminate himself where a case has been dismissed. Nevertheless, this case does not involve a situation where a case has terminated in the ordinary course of the court's business with a defense attorney present. If that were so, I would have no problem in joining the majority. It is a case where the police and prosecutors have cooperated to deprive a defendant of an attorney. This court should not sanction that action.

I respectfully dissent.

CARRO, J. (concurring in the dissent of SMITH, J., and dissenting separately). I am in total agreement with the opinion of my colleague Justice Smith and would like only to add a few remarks.

It is a well-known fact that the public prosecutor's office is granted broad powers and resources with which to carry out its functions of investigating and prosecuting crimes. However, in carrying out that office's equally important role as advocate of justice and servant of the law, it is equally well known that those powers can only be used in ways which foster and encourage public confidence in our government and the system of law upon which it is founded. Accordingly, the prosecutor is charged with the duties of fair dealing with the accused and candor to the courts and must be ever vigilant to see that justice is done. *(People v Pelchat,* 62 NY2d 97, 105; *People v Pugh,* 107 AD2d 521, 532; *People v Baker,* 99 AD2d 656.)* With regard to an individual's privilege against self-incrimination and his or her right to counsel, the Court of Appeals has declared that those officers representing the State must accord the "highest degree of respect" to those fundamental rights. *(People v Rogers,* 48 NY2d 167, 170.)*

In collaboration with the police detectives assigned to investigate the homicide of Olav Kjonstad, the prosecutors involved in this case violated the public trust by deliberately circumventing the constitutional law of this State as set forth in the decisions of the Court of Appeals defining the right against self-incrimination and the right to counsel. The prosecutor's office misled the court in its reasons for dismissing the shoplifting case against defendant and dealt unfairly with the defendant by depriving him of that element which "serves to equalize the positions of the accused and sovereign, [and]

mitigat[es] the coercive influence of the State" *(People v Rogers, supra,* 48 NY2d, at 173), that is, his attorney.

It may be technically correct to argue that the holdings of *People v Rogers (supra)* and *People v Bartolomeo* (53 NY2d 225) are inapplicable, because at the time of interrogation defendant was no longer represented by counsel on a pending unrelated case. However, if we are to maintain confidence in our system of law, it is absolutely imperative that we not ignore how it came to be that defendant was deprived of representation by counsel so as to have his situation fall outside the ambit of the constitutional rules announced in *People v Rogers (supra)* and *People v Bartolomeo (supra).*

As the hearing court found (and its determinations of the facts must be accorded great weight), the prosecutor's office dismissed defendant's misdemeanor shoplifting case specifically to enable the police, who were in court waiting anxiously for the dismissal to take place, to question defendant as a suspect in a murder case, outside the presence of defendant's counsel on the now dismissed misdemeanor case.* The prosecutor's office was, to say the least, less than candid with the court before which the dismissal was entered, when it represented that the People were moving to dismiss "based upon the broad range of factors."

CPL 170.40 (1) permits the People to move for a dismissal of an information or misdemeanor complaint, in the interest of justice, if there exists "some compelling factor, consideration or circumstance clearly demonstrating that conviction or prosecution of the defendant * * * would constitute or result in injustice." In this case it is the dismissal which resulted in injustice: injustice to the defendant, who was immediately thereafter whisked away to an interrogation without counsel, and an injustice to our system of law in the total lack of respect rendered to the fundamental right to counsel, as defined by the decisions of this State's highest court. This was a misuse of the prosecutor's discretionary powers to seek a dismissal in the interest of justice, and such a misuse of powers simply cannot be condoned.

I cannot accept the majority's position that the prosecutor's reasons, even bad faith reasons, for dismissing a case are immaterial. Neither do I accept its interpretation of defendant's argument as a right not to have a case dismissed. The

---

* The court also found that defendant subsequently underwent a custodial interrogation.

cases cited in the majority's opinion concerning the prosecutor's "broad discretion over who, what and when to prosecute" *(People ex rel. Doe v Beaudoin,* 102 AD2d 359, 365) pertain to the prosecutor's exclusive decision-making powers to investigate and formulate charges and initiate prosecutorial proceedings. However, once the initial decision to prosecute has been made and the matter is presented to the court for resolution, the judicial decision-making function also comes into play, and the rights and duties of three parties are now involved: the defense, the prosecution and the court.

The defendant's position is merely that proceedings in court should be conducted with candor and with respect for a defendant's rights. Instead, the prosecutor overstepped the bounds of fairness and violated the integrity of the proceeding at which he moved to dismiss the misdemeanor case when in bad faith he hid from the defendant and the court his decision to have the pending charges dismissed solely to evade the constitutional rules of *Rogers (supra)* and *Bartolomeo (supra).* In fact, to achieve the result intended, eliminating the presence of defendant's counsel in order to interrogate defendant alone, the prosecutor had to conceal from both defendant and the court his reason for dismissing the case, as it is unlikely that had counsel known defendant was wanted for interrogation he would have abandoned his client at that critical point. It is disturbing, to say the least, that this court places its imprimatur on such an act of dishonesty.

Finally, any attempt to compare this case with *People v Colwell* (65 NY2d 883) is untenable, as the facts of that case are clearly inapposite to those herein. In *Colwell,* the normal course of the criminal trial process rendered the case against Colwell no longer pending. Here, it was the underhanded, deliberate design of the prosecutor's office to have defendant's case dismissed in order to circumvent the *Rogers/Bartolomeo* rulings which rendered the case no longer pending.

For all these reasons, I dissent.

SANDLER, J. P., and KASSAL, J., concur with ROSENBERGER, J.; SMITH, J., dissents in an opinion; CARRO, J., concurs in the dissenting opinion of Justice SMITH and dissents separately in an opinion.

Judgment, Supreme Court, New York County, rendered on September 5, 1984, affirmed.