OPINION OF THE COURT
Lorraine S. Miller, J.
This case presents a novel question concerning the extent of the court’s supervisory jurisdiction over pending Grand Jury proceedings. The specific issue raised herein is whether a court may require a prosecutor to discontinue Grand Jury proceedings, prior to the return of an indictment, and direct *830 presentation before another Grand Jury, upon a finding that the initial proceeding is tainted to such a degree that it fails to conform to the letter and spirit of CPL article 190 et seq. This issue is one of apparent first impression and arose in the following context.
Defendants were charged, inter alla, with attempted murder, assault and robbery. The People’s witnesses testified before the Grand Jury that defendants intentionally rear-ended complainant’s vehicle. The vehicles were then driven to defendants’ residence whereat defendant "John Doe” struck complainant’s vehicle with a golf club. The argument continued outside defendants’ home where codefendant "Richard Doe” shot complainant, while defendant John Doe took a purse from a woman who accompanied complainant.
John Doe elected to testify before the Grand Jury, after executing a waiver of immunity. Defendant began his statement and gave a significantly different account of the evening’s events, however, the prosecutor interrupted and directed the defendant to confine his remarks strictly to the exact time and place that the crimes were alleged to have occurred. Defense counsel protested in the presence of the Grand Jury and asked to consult with his client. The prosecutor thereupon directed defense counsel not to speak before the Grand Jury and ordered the court stenographer to strike his protest from the record.
The defendant, John Doe, proceeded to deny having committed the robbery. He also asserted a justification defense, alleging that complainant was the initial aggressor, had attempted to strike the defendant with a golf club after breaking into the defendant’s home, and that codefendant, Richard Doe, shot the complainant during the incident. In an effort to substantiate his statements, the defendant was permitted to introduce photographs and a street map which had been procured by his attorney. (The foregoing was introduced only after a heated discussion between the prosecutor and defense counsel, which had occurred outside the Grand Jury room, but which had been overheard by one of the grand jurors.) Following his statement, the defendant was vigorously cross-examined by the prosecutor.
Defense counsel subsequently complained to this court that the Assistant District Attorney had unduly inhibited his client’s statement before the Grand Jury. Counsel for codefendant then informed the court that he would not permit his *831 client to testify absent a direction from the court that the defendants be permitted to make a statement without interruption. The defense further requested that these statements not be limited to 10:10 p.m., the time at which the crimes were alleged to have occurred.
The court thereupon summoned the Assistant District Attorney (ADA) and a lengthy argument ensued between counsel for the defense and the ADA. The court determined that since defendant John Doe interposed a justification defense, evidence of prior threats, a prior assault upon defendants’ relative, provocation and initial aggression by complainant were relevant to the inquiry and, therefore, properly admissible. The court, accordingly, directed the ADA to permit the defendants to address these issues before the Grand Jury and not to restrict their testimony.
On April 24, 1991, all attorneys reappeared before the court. Counsel for defendant John Doe stated that the prosecutor had disregarded the court’s prior ruling by insisting that the defendant limit his statement to 10:10 p.m.; that he had cross-examined the defendant in a way which restricted and colored the defendant’s answers; that he had again engaged in argument with defense counsel and had made disparaging remarks about him before the Grand Jury; that a grand juror had approached the defendant outside the Grand Jury room and had suggested that defendant retain other counsel. The prosecutor, in response, stated that defense counsel had similarly argued with him in the Grand Jury room and that any improper comments were prompted by the remarks made by defense counsel.
The court summoned the supervising Grand Jury reporter, who read the defendant’s first day of testimony in camera. He was, however, unable to read the notes of another reporter who recorded that day’s proceedings. When it was discovered that the said reporter was unavailable, the case was adjourned for a hearing on the following day.
On April 25, 1991, the grand juror who allegedly spoke to the defendant appeared before the court with the warden of the Grand Jury and stated that she had overheard heated arguments between the prosecutor and defense attorneys regarding the admission of the photographs and street map; that she had informed her fellow veniremen of what had transpired and that she and the other grand jurors had discussed the case, despite express instructions to the contrary. She *832 further stated that on April 24, during a recess, she spoke to defendant John Doe and recommended that he retain other counsel because of acrimonious exchanges between his counsel and prosecutor. She also indicated that although she had been assured that she would not be required to deliberate on murder or similar cases (her sister had been murdered), she was compelled to consider the instant "attempted murder” case. Finally, the grand juror admitted that she had informed the warden of the Grand Jury, prior to her appearance before this court, that the aforementioned events were of such a disturbing nature as to preclude a fair and impartial deliberative process. The warden of the Grand Jury confirmed the foregoing.
The court called the Grand Jury reporter who read her stenographic notes which substantiated, in part, the prosecutor’s improper interruption and restriction of defendant’s testimony in contravention of this court’s ruling as well as some improper colloquy with defense counsel. When the court raised questions concerning why the reporter’s reading failed to reflect many of the other improprieties previously disclosed, the reporter admitted that she was unable to make a complete record since "everyone was talking at once.” The reporter stated that she intended to "add” the material later but ultimately conceded to the court that she could not certify that any transcript emanating from these notes would constitute a fair and accurate record of what had transpired.
At the conclusion of the hearing, the court found that the aforementioned improprieties impaired the integrity, fairness and impartiality of the proceedings and tainted them to such a degree that they did not conform to law. The court, therefore, ordered a new presentation before another panel.
A novel question is thus presented. May a court direct a representation prior to the voting of an indictment? While the Criminal Procedure Law and the common law are replete with authority permitting withdrawals, dismissals and concommitantly, re-presentation of indictments, there is no express statutory or decisional law which permits a court to similarly discontinue preindictment proceedings (CPL 210.20, 210.30, 210.35, 210.40; People v Pelchat, 62 NY2d 97; People v Ortiz, 107 AD2d 824; People v Whitney, 105 AD2d 1111). Ordinarily, such discretion and authority is vested with the prosecutor and Grand Jury. This case requires the court to *833 decide whether the authority to withdraw cases rests exclusively with the prosecutor and Grand Jury or whether a superior court shares concurrent jurisdiction over the issue.
The Court of Appeals considered the parameters of a court’s supervisory jurisdiction over Grand Jury presentations in Matter of Morgenthau v Altman (58 NY2d 1057). At issue in Altman was a court direction which required the District Attorney to establish a prima facie case before the Grand Jury prior to calling the defendant as a witness. The District Attorney commenced a proceeding pursuant to CPLR article 78 challenging the jurisdictional predicate of that order, claiming excessive judicial interference in what was an exclusively prosecutorial function. Although the Court of Appeals ultimately affirmed the denial of a writ of prohibition, it did not definitively address the merits of the controversy. Judge Bellacosa, in his Supplementary Practice Commentaries, underscored the fact that the Court of Appeals holding in Altman (supra) was limited to the question of the procedural propriety of issuing a writ of prohibition and that the court refrained from conclusively resolving the "controversy” surrounding the "responsibilities of court and prosecutor in performing their respective duties with respect to the grand jury” (see, Bellacosa, 1983 Supp Practice Commentaries, McKinney’s Cons Laws of NY, Book 11A, CPL 190.25, 1991 Pocket Part, at 49). As a result, there are, as yet, no substantive or procedural guidelines governing the extent to which a court may intercede in preindictment proceedings.
The instant case is not only factually unique, but of sufficiently compelling concern to warrant a definitive response to the question left open in Altman (supra), i.e., whether the general grant of supervisory power over Grand Jury proceedings includes, within its scope, the authority to direct representation of tainted preindictment proceedings in appropriate cases. In the opinion of this court, this question should be answered in the affirmative.
A review of the historical underpinnings of our Grand Jury system proves helpful to this inquiry. Although little is known about the origins of the Grand Jury system, the institution did exist among the Saxons and was also recognized by the Constitution of Clarendon. It is believed that the first Grand Jury was composed of 12 knights, who stood as accusers or witnesses of suspected criminals. (Morvillo, Grand Jury Issues, *834 NYLJ, Apr. 3, 1984, at 1, col 1.)* Its object was to secure to a subject the right of appeal to his peers under the immunity of secrecy before he could be brought to public trial. It originally functioned as a trier of fact, as well an investigatory and accusatory body. This body also acted as a buffer between the Crown and a subject, protecting the latter against oppression and unfounded prosecutions. While it has retained its investigatory and accusatory functions, it no longer retains its power to act as a trier of fact as it was passed down through the common law. (United States v Olmstead, 7 F2d 756; People v Rosen, 74 NYS2d 624; 38 CJS, Grand Juries, § 1.)
Following the English model, both the United States and the New York State Constitutions mandate that "[n]o person shall be held to answer for a[n] * * * infamous crime, unless * * * on a[n] indictment of a Grand Jury.” (US Const 5th Amend; NY Const, art I, § 6.) Performing the dual role of a sword and a shield, the Grand Jury’s responsibilities included both assessing the adequacy of the prosecutor’s case against a suspected offender and protecting the citizenry against unfounded and arbitrary criminal prosecution (United States v Calandra, 414 US 338, 343; People v Valles, 62 NY2d 36). The Grand Jury may indict only when the evidence establishes a legally sufficient case (CPL 190.65 [1]; 70.10 [1]). "The test is whether the evidence before the Grand Jury if unexplained and uncontradicted would warrant conviction by a trial jury” (People v Pelchat, 62 NY2d, supra, at 105; People v Valles, supra).
The current Grand Jury system is a creature of statute vesting considerable discretion with the prosecution (CPL art 190 et seq.). The District Attorney may choose not to prosecute. However, once he does prosecute, he must execute his powers as prescribed by statute (see, People v Di Falco, 44 NY2d 482; People v Murray, 129 AD2d 319, affd 72 NY2d 689; Davis Constr. Corp. v County of Suffolk, 112 Misc 2d 652, affd 95 AD2d 819). Implicit in the exercise of his power to prosecute is the duty that a prosecutor maintain the integrity of the Grand Jury (CPL 210.35 [5]; People v Doe, NYLJ, June 4, 1990, at 28, col 2; In re Hawkins, NYLJ, July 27, 1989, at 20, cols 4-6, at 21, cols 1-2). He must exercise impartial judgment and discretion and present his case in a disinterested manner. *835 He must be mindful not to inject his opinion of the evidence and refrain from even the slightest coercion (see generally, People v Pelchat, supra).
Since the Grand Jury is historically and statutorily an arm of the court and not merely an extension of the prosecutor’s office (see, CPL 190.05; People v Ianniello, 21 NY2d 418, cert denied 393 US 827), courts are duty-bound to insure that presentations comply with the letter and spirit of the law (see, People v Banville, 134 AD2d 116; see also, People v Oquendo, 172 AD2d 566; People v Rivers, NYLJ, June 18, 1991, at 22, col 3; People v Colban, 151 Misc 2d 32). At the same time, however, this authority, given its extraordinary nature, must be exercised sparingly on an ad hoc basis and only upon proof of egregious errors of law which violate a defendant’s constitutional and/or statutory rights. Under the unique facts and circumstances of this case, the court’s exercise of discretionary authority cannot fairly be labeled an unwarranted intrusion upon the independence of the Grand Jury. Indeed, careful analysis of the instant proceedings reveal that as a result of the numerous errors and improprieties, the impartial nature of the entire proceedings was effectively destroyed and the integrity of the presentation wholly undermined. Judicial economy and the interests of justice militate in favor of preindictment intervention by the court, where, as here, post-indictment dismissal would have been required because of the infirmities which permeated the underlying presentation.
[The court then isolated and analyzed the specific errors and improprieties that occurred in the Grand Jury proceedings, to wit, prosecutorial and defense counsel misconduct and absence of an accurate and complete transcript. Following this discussion, which has been omitted for purposes of publication, the court continued as follows:]
The cumulative effect of all of the irregularities was best summarized by the grand juror who stated that no fair and impartial determination was possible in this case. The confusion, the vituperative and ad hominem attacks of counsel on each other, the deliberate disregard of the court’s ruling, the absence of an accurate transcript, and the jury misconduct all merged to create a "circus-like” atmosphere. Indeed, the instant proceedings were so tainted that preindictment re-presentation appears to be the only viable alternative. While the ultimate result of a Grand Jury proceeding is of no concern to this court, the fairness, integrity and public confidence in the *836 process are of paramount importance. When proceedings are so marred that no fair and impartial result can emanate therefrom, preindictment re-presentation is not only appropriate, but required.

 For further discussion of the evolution of the jury system and origin of the Grand Jury, see Levy, Origins of the Fifth Amendment; The Right Against Self-Incrimination, at 8-12 (1969).