OPINION OF THE COURT
Lorraine S. Miller, J.
This case raises a novel question concerning the propriety of *938 an indictment which was returned in apparent haste, by the Grand Jury, who were allegedly piqued by the late hour at which defendant testified. Based upon defendant’s uncontroverted motion papers, this court concludes that the circumstances underlying the presentation, as well as the failure to provide instructions about justification, so impaired the integrity of the proceeding such that dismissal of the indictment is mandated (CPL 210.35).
I. THE FACTS
Defendant was indicted for a battery of crimes including attempted robbery, assault, possession of a weapon and menacing. Defendant’s omnibus motion cited various improprieties which were witnessed by his attorney, who had been waiting outside the Grand Jury room. Specifically, defendant alleged that the Assistant District Attorney detained the grand jurors until nearly 6:00 p.m., in order to hear defendant’s testimony. Defendant had been scheduled to testify at about 3:00 p.m. but was not produced by the Department of Correction until the later hour. Defense counsel affirmed that while he remained outside the room, several grand jurors rushed by him to pay phones to cancel or rearrange pending appointments. Counsel then overheard one grand juror irritably remark to another: "Defendant should stay home and not keep Grand Jurors working overtime”, clearly under the mistaken impression that defendant was at liberty and appeared late voluntarily. Following the completion of defendant’s testimony, the prosecutor "charged out” certain counts. Less than one minute later, a true bill was returned on these counts and the grand jurors were permitted to depart.
The People, in their answering papers, do not dispute any of the foregoing allegations, which must, therefore, be deemed conceded (see, People v Gruden, 42 NY2d 214).
II. DISCUSSION
There is a paramount judicial responsibility to prevent unfairness in Grand Jury proceedings since the Grand Jury is considered an "arm of the court” (see, People v Ianniello, 21 NY2d 418; People v Doe, 151 Misc 2d 829; People v Marquez, NYLJ, Jan. 21, 1993, at 28, col 3). The parameters of a court’s supervisory jurisdiction over Grand Jury proceedings, discussed, at length, by this court in People v Doe (supra), are also embodied in CPL 210.35, which vests courts with the *939 authority to dismiss an indictment where, inter alla, the underlying presentation fails to conform to the requirements of law to such a degree that "the integrity thereof is impaired and prejudice to the defendant may result” (CPL 210.35 [5]). The obligation of the courts to assess the fairness of a presentation is particularly important since the current Grand Jury system vests considerable discretion with the prosecution (CPL art 190) and such discretion should not be permitted to go unchecked. Each case must be analyzed on an individual basis to determine whether the integrity of the proceedings was impaired and whether prejudice to defendant resulted therefrom (see, People v Howard, 152 Misc 2d 956; People v Sanchez, 125 Misc 2d 394).
For example, in People v Collins (154 AD2d 901), defendant alleged that the indictment should be dismissed as defective due, inter alla, to alleged off-the-record conversations at the conclusion of the Grand Jury proceeding. The Appellate Division rejected this contention noting that defendant failed to demonstrate the "possibility of prejudice” created by these alleged conversations (at 902; see also, People v Erceg, 82 AD2d 947; People v Percy, 45 AD2d 284, affd 38 NY2d 806).
In sharp contradistinction, the undisputed off-the-record remarks overheard by defense counsel herein were of such a hostile, antagonistic nature as to operate to the extreme prejudice of defendant. The comment that defendant should have remained at home and not "keep Grand Jurors working overtime” clearly conveys that at least one member of the panel "blamed” defendant for having exercised his right to testify and for their having to remain late, notwithstanding the fact that the time at which defendant was called to testify was beyond his power and control. To the extent that the remark was directed at another member of the panel, that juror must, likewise, be considered "tainted”.
The activities witnessed by defense counsel as he waited outside the Grand Jury room lend further credence to the contention that defendant was unfairly faulted for grand jurors having to remain late. The frustration of rushed, last-minute telephone efforts to cancel appointments is almost palpable from the motion papers themselves. It is certainly "possible”, if not likely, that many members of the panel shared the punitive view that defendant was the cause of their having to work "overtime”. The likelihood of prejudice resulting therefrom is manifest. The source of that prejudice is particularly disturbing because it centers upon defendant’s *940 exercise of a statutory right to testify. No adverse or unfavorable consequences should be permitted to attach simply because a defendant exercises his right to appear before a Grand Jury. While the substance or content of his testimony may be evaluated by the jury in whatever manner they see fit, the mere exercise of the right to testify should remain free and unhampered if that right is to have any meaning. The undisputed allegations of the motion papers convince this court that there is a substantial possibility that the grand jurors unfairly held defendant’s decision to testify against him, thereby compromising the integrity of the proceedings.
III. THE CHARGE
There are additional factors which buttress the conclusion that the integrity of this presentation was impaired and that defendant was prejudiced as a result. Primary among them is the uncontroverted allegation that a true bill was returned less than one minute after the prosecutor charged out certain counts.
The "rushed” basis of both the charge and the vote is further evidenced by the fact that the prosecutor neglected or deliberately failed to provide instructions regarding justification, notwithstanding the fact that defendant’s testimony focused largely upon his claim that he had acted in self-defense.
Additionally, the grand jurors were asked to deliberate on several counts pertaining to a purported victim about whom no testimony had been presented (at least insofar as the minutes provided to this court disclose). Despite the absence of such testimony, the Grand Jury perfunctorily returned a true bill as to these counts as well. Thus, it would appear to the court that the grand jurors simply "rubber-stamped” the indictment, without due regard for the quality, quantity, weight and sufficiency of the evidence.
Accordingly, this court concludes that the indictment is fundamentally defective and cannot be permitted to stand. The People are, however, granted leave to re-present, if they be so inclined.