*868 OPINION OF THE COURT
Alexander W. Hunter, Jr., J.
This motion for court inspection of the Grand Jury minutes is granted. Having carefully examined the minutes in camera this court finds that the evidence presented to the Grand Jury was legally sufficient to support the charges or any lesser included offense. (People v Pelchat, 62 NY2d 97 [1984]; People v Calbud, Inc., 49 NY2d 389 [1980].)
However, this court finds that the Grand Jury proceedings were defective within the meaning of CPL 210.35 (5) and therefore grants the defendant’s application to dismiss the indictment pursuant to CPL 210.20 (1) (C). Nevertheless, this court authorizes the People to resubmit the charges to another Grand Jury pursuant to CPL 210.20 (4).
The authority of the court to assess the fairness of a presentation is particularly important since the current Grand Jury system vests considerable discretion with the prosecution (CPL 190.05 et seq.) and such discretion should not be permitted to go unchecked. Each case must be analyzed on an individual basis to determine whether the integrity of the proceedings was impaired and whether prejudice to the defendant resulted therefrom.[1]
Upon inspection of the Grand Jury minutes, the court finds that the prosecutor asked irrelevant and highly prejudicial questions of the defendant (Mrs. Maria Dzeloski) when she appeared as a prosecution witness before the same Grand Jury panel that was considering murder charges against her husband. The manner in which the prosecutor questioned the defendant inferentially communicated to the Grand Jury his assessment that her testimony was incredible and not worthy of belief.
The prosecutor has a unique and powerful dual role in the Grand Jury proceedings. He is an advocate and a public officer, charged not only with the duty to secure indictments but also to ensure that justice is done. (People v Lancaster, 69 NY2d 20, 26 People v Pelchat, supra, at 105.) When preparing a Grand Jury presentation and examining witnesses before the panel, the prosecutor must maintain the appearance of impartiality and refrain from conduct which would unduly influence the Grand Jury’s assessment of the evidence. The District Attorney’s duties as a public officer are quasi-judicial *869 in nature and in the performance of his duties he must not only be disinterested and impartial but must also appear to be so. (See, People v Lofton, 81 Misc 2d 572, 575 [1975].)
The defendant was initially questioned before the Grand Jury as a prosecution witness to provide information about the August 19, 1992 murder of Carmelo Rivera, a murder in which the defendant’s husband was allegedly involved. The defendant denied that she was an eyewitness to this murder or that she saw who participated in said murder. Although she admitted being near the crime scene when it occurred, the prosecutor, being dissatisfied with her answers, abandoned a factual inquiry and pursued a series of questions designed to illustrate inconsistencies between her current testimony and alleged statements that she made to the police without an affirmation or an oath.
Prior to this line of questioning, the defendant explained in great detail what she knew about the night of August 19, 1992. She stated that she was present near the crime scene inside a pizza shop with her children when she saw a commotion across the street at the liquor store. She testified that her husband was at home with their smallest child at the time of the incident. She stated that she saw people gathering and then she walked up to the crowd with her kids where she noticed a man bleeding. She testified that she was present for no more than 60 seconds, then she left with her children so that they would not see what was happening.
The prosecutor was not convinced by the defendant’s testimony that she did not witness the crime. He persistently questioned her again about what she claimed she did not see.
"Q. Hadn’t you seen the incident itself?
"A. No, I was busy feeding my kids in the pizzeria.
"Q. Did you hear leading up to — did you hear shouting?
"A. No. There was a lot of music. There was a lot of people in the feast, so I didn’t think it was unusual.
"Q. Now, can you tell us who was part of the group that you saw around this man for this — for those sixty seconds you said you were there.
"A. No.
"Q. Well—
"A. I didn’t bother to look at faces. I grabbed my kids. My kids were watching. I didn’t want my kids to be there. I grabbed my kids and walked away.
*870 "Q. Ms. Dzeloski, is it your testimony you didn’t see anything in the incident that happened that night. Is that what you are telling this Grand Jury?
"A. Yes.
"Q. You were not a witness to the events involved?
"A. No.
"Q. In the death of Carmelo Rivera?
"A. No.
"Q. You never said that?
"A. No.”
The series of questions posed to the defendant by the People about Carmelo Rivera’s murder strongly suggested that he expected the defendant to testify that she was a witness to the crime, although she (Mrs. Dzeloski) had consistently denied knowing anything significant about the incident.
The prosecutor subpoenaed the defendant to testify, although it was clear from the police witness’ testimony that the defendant did not want to participate in the Grand Jury proceeding. The police witness testified that the defendant destroyed the initial subpoena served on her.
The defendant subsequently appeared to answer the subpoena in the company of her attorney. The prosecutor did not explain to their witness why she was required to appear before the Grand Jury and the consequences of her taking an oath and receiving transactional immunity. This is a fact not disputed by the People. (See, People v Gruden, 42 NY2d 214.) The People reaffirmed that the defendant was only an exculpatory witness based upon the information that they received from the police. The prosecutor further stated that they did not have a duty to present exculpatory evidence to the Grand Jury thereby inferring that they did not have to explain such issues to the witness.
It should be noted that the Court of Appeals has held that the prosecutor is officially charged with the orderly presentation of evidence to the Grand Jury and, as such, it is sound practice for the prosecutor to interview prospective witnesses in advance of presenting their testimony to the Grand Jury. (People v Friedgood, 58 NY2d 467, 472 [1983].) If the prosecutor herein followed this practice, he would not have had to ask the defendant several times if she had witnessed the murder.
Although the defendant informed the prosecutor that she *871 knew nothing about the murder, he maintained his position that she was lying. For example, at one point the prosecutor admonished the defendant before the Grand Jury by stating:
"Q. When you spoke to the police last week, did you tell them that you knew a number of people who were involved in this incident? Yes or No?
"A. No.
"Q. I remind you at this time, Ma’am, that you are under oath, and that you are required to give truthful answers to every question put to you, and I also remind you that testimony testifying under oath falsely in a material fashion is a felony in this State called perjury, for which if the Grand Jury finds, they can indict you; do you understand that?
"A. Yes.
"Q. I ask you, now, did you tell the police that you knew four of the individuals involved in this homicide? Yes or No?
"A. No.”
This court finds that by administering a "perjury warning” to the defendant in front of the grand jurors, the prosecutor impressed upon the jurors that he believed this witness was lying. Courts have universally condemned the prosecutor’s practice of characterizing witnesses as liars.[2]
In People v Shapiro (50 NY2d 747, 762, 763 [1980]), the Court stated that it is the prosecutor’s obligation to warn potential witnesses before they testify of their possible liability for false statements under oath. (See also, People v Lee, 58 NY2d 773 [1982].)
The instant case is analogous to Shapiro, but only in the sense that if the People believe a witness will give false testimony under oath, it is proper to forewarn such witness of the consequences of perjury without intimidating the witness. (People v Shapiro, supra.)
When the prosecutor herein believed that the defendant was committing perjury, the appropriate course of conduct was not taken. The prosecutor should have removed the witness from the presence of the Grand Jury and in a nonintimidating manner advise the witness of what was required of her when she testified under oath. In addition, the prosecutor should have advised the defendant of the consequences of false statements and since her attorney was present request that he do *872 the same, thereby alleviating any prosecutorial inference to the grand jurors that the defendant was a liar.
Furthermore, the prosecutor’s subsequent questions indicated that the defendant was being intimidated and coerced by others to lie.
"Q. Mrs. Dzeloski, I mentioned a number of names of people to you that you said weren’t there, as well, is that correct? Do you recall that?
"A. Yes.
"Q. Are you afraid of any of these people?
"A. No.
"Q. Had you heard, by the way, that there was any kind of talk in the neighborhood that people should not cooperate with the police with respect to this case?
"A. No.”
By asking these questions, the prosecutor was able to reaffirm his reasons to believe that defendant was lying in lieu of his perjury warnings to her earlier.
The prosecutor then continued a line of inquiry to further establish that the defendant had reasons to lie before the Grand Jury.
"Q. Are you afraid of your husband?
"A. Am I afraid of my husband?
"Q. Yes.
"A. No.
"Q. Does your husband beat you?
"A. No.
"Q. And, George Mazzone wasn’t there?
"A. No.
"Q. You love your husband?
"A. Yes.
"Q. He works, and he supports your children?
"A. Yes.
"Q. You love your children?
"A. Yes.
"Q. You don’t want to see anything bad happen to him?
"A. No.
"Q. Would you say, would you not, that you are interested in what this Grand Jury does when they vote on this case today?
*873 "A. Yes.”
The prosecutor must limit his interrogation of a witness to matters which are relevant, nonhearsay and not privileged. (People v De Martino, 71 AD2d 477, 482 [1st Dept 1979]; see also, People v Schweain, 122 Misc 2d 712, 713 [Sup Ct, Bronx County 1983] [" '[i]n New York, the rule has long been that only competent and relevant evidence may be introduced at grand jury [proceeding]’ ”].)
The District Attorney is a public officer and as such owes a "duty” of fair dealing to the accused and candor to the courts. (People v Pelchat, 62 NY2d 97, 105, supra; CPL 190.25 [5], [6].)
The aforesaid examination was prejudicial, inflammatory and irrelevant. These questions were only asked to reinforce the impression in the grand jurors’ minds that the defendant was committing perjury — especially in light of the fact that the defendant was not proffered as a defense witness but called by the prosecution. Not only were the questions about her husband and people in the neighborhood hearsay and speculative, they had no relevance to the Grand Jury investigation of Carmelo Rivera’s death. This line of questioning was in derogation of the prosecutor’s duty to maintain an evenhanded, balanced approach when soliciting the relevant facts. (People v Davis, 119 Misc 2d 1013, 1020 [Sup Ct, Queens County 1983].) It is the role of the prosecutor to assist in the indictment process, but not as in this instant case wherein the prosecutor assessed the witness’ credibility and drew inferences from the facts, a function solely in the grand jurors’ unique province. (People v Batashure, 75 NY2d 306, 310, 311 [1990]; see, People v Jackson, 65 NY2d 265, 271 [1985] [as it relates to petit jurors].)
The prosecutor herein clearly usurped his function thereby invading the domain of the Grand Jury. To further illustrate this point, the prosecutor asked the defendant what her husband did for a living, how much money he earns and whether or not her father-in-law owned real estate. These types of questions had no probative connection to the Grand Jury’s investigation of Carmelo Rivera’s murder. The court in People v Smays (156 Misc 2d 621 [Sup Ct, NY County 1993]) found a similar line of questioning improper and dismissed the indictment because of prosecutorial misconduct which included questions to the defendant about issues such as the source of income.
Information about marital finances has been deemed to be *874 confidential. The source of a wife’s knowledge about her husband’s livelihood are inevitable disclosures to her by her husband in reliance upon their marital relationship. (In re Grand Jury Investigation [Hipes] v United States, 603 F2d 786 [9th Cir 1979]; see also, Matter of Vanderbilt [Rosner — Hickey], 57 NY2d 66 [1982].)
The cumulative effect of the prosecutor’s consistent overreaching of his role in the Grand Jury by his prejudicial and inflammatory questions to defendant impacted adversely upon the grand jurors’ view of the defendant’s credibility as a witness. The prosecutor’s subsequent act of presenting perjury charges against the defendant to this same Grand Jury panel tainted any valid indictment against her. The prosecution should have presented the perjury charges to a separate and impartial Grand Jury panel, not influenced by the prosecutor’s improper, prejudicial and inflammatory questions and comments.
Accordingly, the indictment is dismissed with leave to represent the charges to another Grand Jury.
Defendant’s motion to suppress statements is denied. Defendant was not in custody at the time when the statements were made to the police, a fact affirmed by the defendant in her motion papers. Furthermore, the defendant did not allege in her motion papers that the statements were coerced. Accordingly, the motion for suppression or in the alternative a Huntley hearing is denied.

. See, People v Lewis, 157 Misc 2d 937; People v Howard, 152 Misc 2d 956; People v Sanchez, 125 Misc 2d 394.

. See, People v Hollis, 144 Misc 2d 259; People v Ka, NYLJ, Jan. 14, 1992, at 26, col 4; People v Rivers, NYLJ, June 18, 1991, at 22, col 3.