OPINION OF THE COURT
Rory J. Bellantoni, J.
By indictment number 07-0464, defendant has been charged with the following crimes: (i) 12 counts of possessing a sexual performance by a child, and (ii) 12 counts of possessing an obscene sexual performance by a child.
The charges arise from an incident that occurred on or about March 28, 2007; the Westchester County Department of Probation executed a search warrant at defendant’s residence and found child pornography therein.
Defendant was arraigned on the instant indictment on April 26, 2007 and entered a plea of not guilty to all counts contained therein. By notice of motion dated May 9, 2007, defendant seeks various relief. This court shall address defendant’s requests in seriatim:
1, Motion for Discovery and Inspection
Defendant moves this court to enter an order directing the People to provide the defense with certain material for discovery and inspection. The People oppose defendant’s application, asserting, inter alia, that consent discovery was provided to defendant’s counsel and that all statutorily required discovery has been provided.
It is well settled that courts have no authority to order discovery for which there exists no statutory basis. (Matter of Pirro v LaCava, 230 AD2d 909 [2d Dept 1996]; Matter of Catterson v Jones, 229 AD2d 435 [2d Dept 1996].) In this case, defendant’s motion seeks discovery and inspection of certain material; however, defendant has failed to demonstrate that the People have unjustifiably refused to permit defendant’s inspection of any material discoverable pursuant to Criminal Procedure Law §§ 240.20 or 240.40.
Defendant also requests that the District Attorney and her agents refrain from destroying statements of witnesses or prospective witnesses and provide him with all exculpatory material. Defendant’s motion is denied in part, but granted only to the extent that the People are advised of their continuing obligation to determine if any Rosario material exists, preserve any *642 such material and disclose it to defendant as applicable by statute and/or case law. (People v Rosario, 9 NY2d 286 [1961].) The People are further advised of their continuing obligation to preserve and disclose to the defense any exculpatory material that may come into their possession or control. (Brady v Maryland, 373 US 83 [1963].)
Accordingly, as defendant’s request seeks disclosure of material that (i) was previously disclosed pursuant to the executed consent discovery order, (ii) is sought in advance of the applicable statutory timetable, (iii) is not subject to introduction on the People’s case, and/or (iv) pertains to material that is not subject to disclosure pursuant to Criminal Procedure Law article 240, the application for additional discovery is denied.
2. Motion to Inspect Grand Jury Minutes and Dismiss or Reduce Indictment; Motion to Dismiss Defective Grand Jury Proceedings
Defendant moves this court to inspect the grand jury minutes and, upon such inspection, seeks the dismissal or reduction of counts charged in the instant indictment, challenging the legal sufficiency of the evidence presented, and the propriety of the legal instructions provided.
Preliminarily, this court grants defendant’s motion insofar as it seeks an in camera inspection of the grand jury minutes, yet denies same to the extent that it seeks disclosure of those minutes to defendant, as the determination of the instant motion does not require such disclosure. (Matter of Brown v LaTorella, 229 AD2d 391 [2d Dept 1996]; Matter of Brown v Rotker, 216 AD2d 378 [2d Dept 1995].)
Following an in camera review of the grand jury minutes, this court finds that the evidence presented before the grand jury was legally sufficient to support the crimes charged in the instant indictment. When considering a motion to dismiss an indictment pursuant to Criminal Procedure Law § 210.20 (1) (b), the relevant inquiry concerns the legal sufficiency of the evidence, not the weight or adequacy of the proof presented. (See People v Galatro, 84 NY2d 160 [1994].) Legally sufficient evidence has been defined as competent evidence which, if accepted as true, would establish defendant’s commission of each and every element of each offense charged. (CPL 70.10 [1]; see also People v Jensen, 86 NY2d 248 [1995]; People v Jennings, 69 NY2d 103 [1986].) In the context of grand jury procedure, this has been held to mean proof of a prima facie case, not proof beyond a reasonable doubt. (See People v Gordon, 88 NY2d 92 *643 [1996]; People v Mikuszewski, 73 NY2d 407 [1989].) Moreover, the court, in evaluating the sufficiency of the evidence, must determine whether the evidence, when viewed in the light most favorable to the People, if unexplained and uncontradicted, would warrant conviction by a petit jury. (See People v Swamp, 84 NY2d 725 [1995]; People v Pelchat, 62 NY2d 97 [1984].)
Based upon an in camera review of the grand jury minutes, this court finds that the competent evidence presented, when viewed in the light most favorable to the People, if unexplained and uncontradicted, was legally sufficient to warrant conviction by a petit jury.
To the extent defendant moves this court to dismiss the instant indictment due to the alleged inadequacy of legal instructions provided to the grand jurors during the presentation of this matter, the court recognizes that a grand jury need not be instructed with the same degree of precision that is required when the court instructs a petit jury. (People v Valles, 62 NY2d 36 [1984]; People v Calbud, Inc., 49 NY2d 389 [1980].) Accordingly, this court finds that the legal instructions provided to the grand jurors by the Assistant District Attorney were adequate and complete.
Based upon the foregoing, and this court’s review of the grand jury minutes, defendant’s application seeking the dismissal or reduction of the counts charged in the instant indictment is denied.
3. Motion for SandovalfVentimiglia Hearing
Defendant moves this court to conduct a pretrial hearing to determine the extent to which the People may inquire into any of defendant’s prior criminal convictions, as well as any of defendant’s prior uncharged criminal, vicious or immoral conduct. The People consent to defendant’s application for a Sandoval hearing. This court therefore orders that, immediately prior to trial, a hearing be conducted pursuant to People v Sandoval (34 NY2d 371 [1974]). At the time of the hearing, the People shall notify defendant of all specific instances of defendant’s prior uncharged criminal, vicious or immoral conduct of which they have knowledge and intend to use for impeaching defendant’s credibility in the event defendant testifies at trial. (CPL 240.43.) Defendant must then sustain his burden of informing the court of those instances of his prior misconduct that may be unduly prejudicial to him as a witness on his own behalf. (People v Matthews, 68 NY2d 118 [1986]; People v Malphurs, 111 AD2d 266, 269 [1985].)
*644 Defendant’s application for a pretrial hearing pursuant to People v Ventimiglia (52 NY2d 350 [1981]) is denied without prejudice. Defendant’s application is premature, since the People have not yet advised the court that they intend to introduce evidence of defendant’s prior crimes, uncharged crimes, or other bad acts on their direct case. Nonetheless, upon appropriate application by the People, and upon notice to defendant, a Ventimiglia hearing shall be conducted immediately prior to trial to prospectively determine the admissibility of evidence of defendant’s prior crimes, uncharged crimes, or other bad acts on the People’s case-in-chief.
4, Motion to Suppress Physical Evidence
Defendant moves to preclude and suppress all evidence obtained pursuant to the execution of a search order.* The People oppose defendant’s motion in its entirety.
On February 23, 2004, defendant was convicted of committing the crime of making a punishable false written statement, a class A misdemeanor, and was sentenced on May 17, 2004 to a term of three years’ probation. The instant record indicates that defendant was a juvenile patient at Stony Lodge Hospital when that incident occurred.
On March 20, 2007, the Department of Probation sought a search order, pursuant to CPL 410.50 (3); the search order was signed on March 22, 2007 by an Ossining Town Justice. On *645 March 28, 2007, the search order was executed and a search of defendant’s residence was conducted.
CPL 410.50 (3) states that
“[i]f at any time during the period of probation the court has reasonable cause to believe that the defendant has violated a condition of the sentence, it may issue a search order. Such order must be directed to a probation officer and may authorize such officer to search the person of the defendant and/or any premises in which he resides or any real or personal property which he owns or which is in his possession.”
In People v Adams (71 Misc 2d 658 [Nassau County Ct 1972]), the court, as an issue of first impression, decided the issue of a probationer moving for suppression of evidence obtained upon the execution of a search order. In that case, the court presented a test/framework to determine “reasonable cause.” The court stated, in pertinent part, that:
“(1) ‘Reasonable cause’ is grounded on the facts and circumstances, to be weighed collectively. A major fact to be considered is the individual’s status as a . . . probationer.
“(2) A . . . probationer is protected constitutionally from unreasonable searches and seizures. But his status, the necessities of supervision, the ultimate objectives of. . . probation, and the obligation owed to the general public must all be considered in determining reasonableness.” (Id. at 660.)
In Adams, the affidavit from the probation officer contained information, provided by a Suffolk County police officer, that the probationer failed to appear in another court to answer weapons and drug charges, that a warrant had been issued for his failure to appear, included copies of the complaint filed, included the arrest form and police laboratory results pertaining to the drug charges, and also included an affidavit from a witness that observed illegal drugs at probationer’s home. Thus, the court found that the search order was properly issued as the information provided in the affidavit was deemed to be reliable and presented sufficient information which showed that the probationer was in apparent violation of the terms and conditions of his probation.
In the instant case, the affidavit from Probation Officer Dorothy Gadson-Brown states that defendant was convicted of committing the crime of making a punishable false written state *646 ment and was sentenced to a term of three years’ probation. While this is a class A misdemeanor and defendant was a juvenile patient at a child-adolescent psychiatric hospital, the court notes that the probation officer felt “compelled” to include in her affidavit that a pornographic magazine was an issue in his conviction.
The affidavit further included that the basis for requesting the search order was that, on February 24, 2007, defendant was allegedly observed peeping into cars to watch couples engage in sexual conduct. Further, a person identified as “the complainant” told police that defendant had been observed in the area on prior occasions attempting to videotape individuals without their knowledge. Defendant was questioned by police, but not arrested. Defendant’s car was apparently searched and the search resulted in pornography (not illegal nor alleged to be in violation of his probation conditions) and blank videotapes. The affidavit also failed to state how the probation officer learned that defendant was questioned by police for peeping into cars for the purpose of observing couples being intimate.
The affidavit also includes that defendant was arrested in 2006 in the state of North Carolina for driving with a suspended license. Again, the court notes that the probation officer felt “compelled” to include that photos of deceased people’s genitalia were found in his car; defendant was employed in a funeral home at the time. However, the affidavit glaringly omits whether the defendant’s probation was violated as a result of that arrest or at any time during the three years that defendant was supervised. The affidavit then includes the conclusory allegation that defendant “may be in possession of equipment used in photographing, filming, producing, manufacturing or distributing pornographic still or motion pictures.” (Search order affidavit at 2, No. 11 [emphasis added].) The photographic/video equipment referenced in the affidavit refers to the equipment he possessed when he was allegedly peeping into cars at Glen Island Park. However, there is no indication of how defendant’s possession of such equipment is prohibited — whether by law or by his probationary conditions — nor any indication that he actually filmed or photographed pornography. In fact, the affidavit states that the tapes found in defendant’s car on February 24, 2007 were blank. (Search order affidavit at 2, No. 6.)
Moreover, the court notes that defendant’s order and conditions of probation were not included in the search order application, just a mere recitation of the alleged probation condition *647 No. 4 that defendant was alleged to have violated. This certainly is a key allegation, but the court is unaware if this in fact is a condition of defendant’s probation. (See generally People v Manngard, NYLJ, July 17, 2001, at 23, col 1 [court dismissed proceeding to revoke probationary sentence when the alleged condition which the probationer was alleged to have violated was not part of the probationer’s court ordered probation conditions].)
When applying the test set forth in Adams, it can hardly be said that the issuance of the search order in the instant case was proper. The defendant’s status as a probationer is not contested. However, defendant was supervised as a result of a misdemeanor charge of making a false written statement. Defendant was not on probation for a sex offense, nor does the affidavit reflect that defendant has ever been arrested for similar charges. Defendant merely failed to alert his probation officer that police questioned him — he was not arrested, nor based on the facts presented in the affidavit does it appear that defendant committed any wrongdoing. However, after a mere technical violation on a misdemeanor probation supervision (defendant’s probationary supervision term was approximately two months away from expiring), the probation officer felt “compelled” to seek a search order and search defendant’s residence, including a padlocked closet. The court fails to see how searching defendant’s residence would be consistent with the duty the probation officer has to supervise defendant, but rather, it seems that the probation officer, after supervising defendant for almost three years had a “hunch” that defendant perhaps was in possession of illegal pornography. However, a “hunch” is insufficient to establish the reasonableness of the search, especially after a month had transpired from the time defendant was merely questioned by police to when the search was actually conducted; the items seized from defendant’s residence had nothing to do with the police questioning at Glen Island Park. It seems that the search was aimed at finding evidence of a new crime rather than just merely for supervising defendant. It can hardly be concluded, based on the scant facts of the probation officer’s affidavit, that there was reasonable cause for the issuance of the search order. Indeed, this is belied by the fact that the Ossining Justice failed to execute a search order with sufficient specificity for a proper search. The order reads as follows:
“To: Any Probation Officer/Supervising Probation *648 Officer of the Westchester County Department of Probation
“The above named having been sentenced to 3 years of Probation supervision, and this court having reasonable cause to believe, based on the attached affidavit and/or any testimony, that he has violated a condition of his Probation sentence it is ordered:
“YOU ARE HEREBY COMMANDED TO SEARCH ON OR BEFORE April 9, 2007, the person of the above named probationer, the premises at which he resides and any real or personal property which defendant owns or has in his control, and if property be found there to seize same, leaving a copy of this search order and receipt for any property taken and prepare a written inventory of the property seized and promptly return this search order to Hon. Francesca E. Connolly as required by law.”
This search order is faulty on its face; the search order fails to specify the premises to be searched, the person to be searched, the specific place on the premises to be searched — the People’s papers concede that defendant’s apartment was located on the second floor of the premises — an allegation that is absent from the affidavit and the search order itself. Furthermore, the People state that the bedroom and furniture searched was “identified to belong to the defendant,” yet neither the affidavit, nor the search order moving papers indicate how or by whom the bedroom and furniture was identified as belonging to defendant in order for the probation officer and police officer to conduct the search. Most importantly, the search order fails to specify the items/property to be searched and seized.
When a defendant is on probation supervision, his/her Fourth Amendment protection is lessened; however, such protection is not obliterated. In People v Hale (93 NY2d 454, 459 [1999]) the Court of Appeals stated as follows:
“We begin with the premise that a probationer’s home is protected by the constitutional requirement that searches be reasonable. It all comes down to what is ‘reasonable’ under the circumstances, bearing in mind that the reasonableness of a search is measured by, among other things, the relative privacy expectation and entitlement of the person to be searched. For example, a defendant on probation does not stand in the same constitutional shoes as someone entirely free of judicial supervision and *649 control. At one extreme, a person who has just been lawfully placed under arrest for armed robbery has an expectation of privacy vastly inferior to a law-abiding citizen who is enjoying a quiet evening at home. A defendant on probation is at neither extreme of the constitutional spectrum.” (Citations omitted.)
This case is cited by the People in support of their position that the search order was properly issued. However, Hale is distinguishable from the instant case as the probationer in that case had consented, as part of his probationary conditions, to searches of his residence by the probation officer without having to seek a search order from a court to conduct such a search. No such condition is alleged to have been part of defendant’s probationary conditions in this case.
Beyond having a right not to be searched unless reasonable cause exists for such search, a probationer has a right to be served with a judicial search order that is specific as to who is being searched, what is being searched, when it may be searched and, in some cases, how it is to be searched. Most importantly, a search order must be specific as to which legal items/property owned by a probationer may or may not be proper for him to possess and may constitute a violation of a condition of his probation supervision, and the probationer, as well as the probation officer, must know with specificity the items being searched for, so as to prevent an impermissible and over broad search. In the instant case, the People do not assert that as part of defendant’s probation conditions he was prohibited from owning video/photographic equipment.
Based on the foregoing, the court finds that the search order was improperly issued and facially invalid. Accordingly, the physical evidence obtained pursuant to the execution of the search order is thus suppressed and precluded.

 Defendant initially moved to suppress evidence obtained pursuant to a “search warrant,” but defense counsel conceded in his moving papers that he had not had an opportunity to review the “search warrant” at the time he prepared his omnibus motion. In the People’s affirmation in opposition, the People’s legal analysis and argument pertained to search warrants. The court received the actual document the day the matter was calendared for declaration of readiness. When the court reviewed the document, it was not a “search warrant,” but rather a “search order” that was issued. The court alerted both parties that their papers did not address the fact that the search was conducted pursuant to a search order and not pursuant to a search warrant. The court allowed the parties to respond via letter. When the court received defendant’s and the People’s “supplemental letters” they again failed to address that the search of defendant’s residence was conducted pursuant to a search order. The court again allowed the parties to respond to the issue of the search order. The People only provided the court with copies of cases, which pertained to cases where a condition of probation authorized the search of probationer’s residence, and did not present a legal argument relating to the propriety of the issuance of the search order. The People do not argue that such a condition was part of defendant’s probationary conditions, but rather, the only probation condition that is alleged that defendant violated was that he failed to tell his probation officer that he was questioned by police. Defendant did submit a letter addressing the issuance of the search order.